LOUISVILLE, NEW ORLEANS & TEXAS RY. CO. *v.* STATE OF
MISSISSIPPI.

1. CONSTITUTIONAL LAW.  *Interstate commerce.   State regulation of railroads.*
   *Separate accommodations for white and colored passengers.*
   Section 1 of an act of the legislature approved March 2, 1888, acts 1888, p. 48,
   provides: "That all railroads carrying passengers in this state (other than
   street railroads) shall provide equal but separate accommodations for the
   white and colored races, by providing two or more passenger cars for each
   passenger train, or by dividing the passenger cars by a partition, so as to
   secure separate accommodations."   This section, so far as it applies to the
   carrying of passengers traveling wholly within the state, is not in violation
   of ¿ 8, art. I, of the constitution of the United States, which grants to
   congress the right to regulate interstate commerce; and this, although the
   railroad also traverses other states and is engaged regularly in carrying
   interstate passengers.

2. SAME.  *Act of March 2, 1888, ¿ 2; whether applicable to interstate passengers.*
   Whether ¿ 2 of said act which requires white and colored passengers to be
   assigned to separate cars or compartments, and which requires passengers,
   under a penalty, to conform to such requirements, is valid, as applied to
   passengers traveling through the state, or to or from points without the
   state, is not decided.

3. RAILROADS; PUNISHABLE FOR FAILURE TO PROVIDE SEPARATE CARS FOR
   WHITE AND COLORED PASSENGERS.
   Since it is within the power of the legislature to require railroads to pro-
   vide separate accommodations for white and colored passengers traveling
   wholly within this state, ¿ 3 of said act of 1888, which makes it a misde-
   meanor and punishable for any railroad to refuse or neglect to furnish such
   separate accommodations, is valid and enforceable by the courts of this
   state.

4. SAME.  *Act of March 2, 1888.   Not repealed by ¿ 3 of act of March 14, 1888,*
   *Acts 1888, p. 44.*
   The above-mentioned act of March 2, 1888, was not repealed by ¿ 3 of the
   act approved March 14, 1888, amendatory of the act of 1884, generally
   known as the "railroad supervision bill."

FROM the circuit court of Tunica county.

HON. J. H. WYNN, Judge.

The facts are stated in the opinion.   After the passage of the
statute under construction in this cause and under which the ap-

pellant was indicted, an act of the legislature was passed and approved March 14, 1888, which was amendatory of the general act of 1884, known as the "railroad supervision bill." Section 3 of this act is as follows : " Every conductor of trains carrying passengers in this state is hereby authorized to assign passengers to any car or to seats in a particular part of any car on his train ; *provided,* that equal accommodations are given to passengers holding tickets of the same class, and any forcible resistance ·to such assignment shall be deemed a breach of the peace." Acts 1888, p. 46. This is the act and section referred to in the concluding sentence of the opinion.

*Yerger & Percy,* for appellant.

We submit that the enforcement of said act would have the effect to impose a burden upon interstate commerce ; that to subject appellant to its provisions is an attempt on the part of the state to regulate interstate commerce, a power belonging exclusively to congress. Constitution U. S. art. I, § 8 ; *Gibbons* v. *Ogden,* 9 Wheat. 1 ; *Passenger Cases,* 7 How. 283 ; *Ex parte McNeil,* 13 Wall. 236 ; *Case of State Freight Tax,* 15 Wall. 232 ; *R. R. Co.* v. *Fuller,* 17 Wall. 560 ; *Henderson* v.*Mayor of New York,* 92 U. S. 259 ; *Chy Lung* v. *Freeman,* Ib. 275 ; *R. R. Co.* v. *Husen,* 95 Ib. 465; *Mobile* v. *Kimball,* 102 Ib. 691, 697 ; *Brown* v. *Houston,* 114 Ib. 622 ; *Walling* v. *Michigan,* 116 Ib. 446 ; *Pickard* v. *Pullman Southern Car Co.,* 117 Ib. 534; *Wabash Ry. Co.* v. *Illinois,* 118 Ib. 557.

The statute under which this indictment was found is analogous in its requirements to that of Louisiana, considered by the supreme court of the United States in the case of *Hall* v. *Decuir,* 95 U. S. 485. It falls so fully under the denunciation of unconstitutionality as pronounced by the court in said case that we do not feel that we could do more than to refer to that case to show that the act of March 2, 1888, is unconstitutional and void, so far as it affects interstate commerce.

Clearly under this decision the defendant had the right to make such reasonable regulations for the disposition of passengers upon its trains while making their trips within this state or without as

seemed to it best.  The statute in question seeks to take away from the railroad company this right, while in the state of Mississippi.

As said in the case of *Hall* v. *Decuir, supra,* if the public good requires that the whites and blacks be separated while traveling on railroads in Mississippi that are engaged in the carrying of interstate passengers, such legislation must come from congress.

It is just such a case as this that the provision of the constitution aforesaid was intended to meet.  Suppose that by the laws of the states of Tennessee and Louisiana, the appellant is forbidden to separate its passengers of the white and colored races, while in Mississippi they are required to separate them, what, inextricable confusion, inconvenience and new burdens upon its interstate passenger business would ensue.

In *Robbins* v. *Shelby Taxing District,* 120 U. S. 489, the court says : " In a word, it may be said that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations and not to a multitude of systems.  The doctrine of the freedom of that commerce, except as regulated by congress, is so firmly established that it is unnecessary to enlarge further upon the subject."  See also *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 204.

It cannot be contended with force that the act in question is a police regulation by the state.  It does not concern the security of the lives or the health of its people, nor provide safeguards against the introduction of contagion.  The only reason for the separation of the passengers is that of their color, which we submit, under the law of the land, is not sufficient.

The special plea should have been sustained, the case dismissed and the appellant discharged.

*W. P. & J. B. Harris,* on the same side.

By the demurrer the allegations of the special plea are admitted to be true, and among these is the allegation that the law hinders, delays and obstructs the defendant company in its interstate business, and imposes burdens and restrictions upon it, which hamper and trammels it in such business, and add greatly to the cost of carrying interstate passengers.

It will not be denied that to congress belongs the power to regulate commerce among the states. Constitution of U. S., art. 1, § 8 ; *Stone* v. *R. R. Co.*, 62 Miss. 633. It will also not be denied that transportation of passengers is commerce, and that the carrying of passengers from one state to another is commerce between the states, and that the power to regulate interstate commerce embraces within it all the instrumentalities by which the commerce is carried on, and the *means* by which it may be aided and enlarged ; that transportation by railroads is as much a subject of control by congress as transportation by shipping upon the navigable rivers of the United States, or upon the high seas.

In support of these propositions, we here cite, in addition to the authorities already given in the brief of our associate counsel, the following cases : *Clinton Bridge Case*, 1 Woolworth 151 ; *R. R. Co.* v. *Maryland*, 21 Wall. 456 ; *Peck* v. *R. R Co.*, 94 U. S. 164 ; *R. R. Co.* v. *Illinois*, 118 Ib. 557 ; Interstate Commerce Act, U. S. Statutes at Large, 1886 and 1887, 379 ; *R. R. Co.* v. *Dower*, 94 U. S. 155 ; *Munn* v. *Illinois*, Ib. 173.

The commerce clause of the constitution, as it is called, was fully discussed and passed upon by this court in *Stone* v. *R. R. Co.*, 62 Miss. 607. In that case this court held that the state had the right to regulate charges for the carriage of freight and passengers in this state over railroads created by the state, and lying wholly within the state.

Beginning with the celebrated case of *Gibbons* v. *Ogden*, 9 Wheat. 1, and coming down to *Asher* v. *Texas*, 128 U. S. 128, scarcely a term of the supreme court of the United States has passed at which the commerce clause aforesaid has not been under discussion, until now it can, we think, be safely said that the whole ground has been covered. Since the decision by our supreme court in *Stone* v. *R. R. Co.*, *supra*, many apparent conflicts in the decisions of the supreme court of the United States on the subject have been reconciled, and points treated by our court as unsettled have been decided adversely to the view then taken by the supreme court of this state. Besides, since then congress has assumed active control of the subject of interstate commerce by positive legislative regulation.

Even without this legislation, and in the light of the decisions of the supreme court of the United States and of this state in *Stone* v. *R. R. Co.*, *supra*, this act of March 2, 1888, is an invasion of the province of congress, and is void.

(Counsel cited and reviewed at length the authorities already cited in the brief of associate counsel for appellant as to the definition, extent, and subjects of regulation of interstate commerce, in support of the doctrine that interstate transportation of passengers is beyond the reach of state legislation.)

Another point well settled by the decisions is that the inaction by congress on the subject of interstate commerce is equivalent to a declaration that it shall remain free and untrammeled. *Smith* v. *Alabama*, 124 U. S. 473 ; *Robbins* v. *Shelby Taxing District*, 120 U. S. 433 ; *Machine Co.* v. *Gage*, 100 U. S. 276. The above authorities and those listed in the brief of associate counsel settle the following propositions :

1. The transportation of passengers from one state to another is a subject national in its character.

2. Being national in its character, the power to regulate it rests exclusively with congress.

3. The power resting exclusively in congress, the absence of any express exercise of the power by congress must be taken as an indication of the will of congress that it shall remain free and untrammeled.

4. Such being the manifest will of congress, any legislation operating on this subject by the state is in contravention of this will and invalid, unless, as was said in *Robbins* v. *Shelby Taxing District, supra*, the action of the state relates " to matters of local concern only."

In determining what are matters of local concern only, the rule is that whenever the statute of a state invades the domain of legislation which belongs exclusively to congress it is void, no matter under what class of powers it may fall, or how closely allied to powers conceded to belong to states. The validity of the state law does not depend so much upon the nature of the power it purports to exercise as upon the subject with which it attempts to deal, and the extent to which it attempts to exercise that power.

*Henderson* v. *Mayor of New York*, 92 U. S. 271 ; *R. R. Co.* v. *Husen*, 95 U. S. 471 ; *Sherlock* v. *Alling*, 93 U. S. 104 ; *Smith* v. *Alabama, supra ; Nashville Ry. Co.* v. *Alabama*, 128 U. S. 100 ; *Kidd* v. *Pearsons*, 128 U. S. 1.

But the case that is decisive of the one at bar is *Hall* v. *Decuir*, 95 U. S. 485.   In that the precise question here involved was presented, with this difference : The instrument of commerce was a steamboat plying the navigable waters and in this case the instrument of commerce is a railway.   In that case the races were required to be kept together, in this case they are required to be kept separate.   In *Stone* v. *R. R. Co.*, 62 Miss. 607, this court reviewed the case of *Hall* v. *Decuir*, and among other things said : " It may be conceded that a state law requiring railway companies to give equal accommodations on cars going from state to state to all passengers would fall under the condemnation of the decision in *Hall* v. *Decuir*."

In *Wabash Railway* v. *Illinois*, 118 U. S., *supra*, the court said : " The applicability of the language in *Hall* v. *Decuir* to transporation by rail is obvious."

There cannot be one set of rules for Mississippi and another for Louisiana and yet another for Tennessee, applying to the same carrier.   " It is a matter of history that the object of vesting congress with the power to regulate commerce among the states was to insure uniformity of regulation against conflicting and discriminating state legislation."   *Walling* v. *Michigan*, 116 U. S. 457 ; *Mobile Co.* v. *Kimball*, 102 U. S. 697.

It is admitted that the defendant was engaged in interstate commerce, operating an interstate road.   The act of 1888 is therefore invalid so far as it affects the appellant and other interstate roads.

   *T. M. Miller*, attorney-general, for the state.

The proposition advanced is, in short, that where a corporation is created by the state, primarily for the benefit of her own people, to serve as a common public carrier of freight and passengers, such a corporation is emancipated from state control, in the public interest, the very moment that, by connecting its line of railway with another extending beyond the state limits, it becomes engaged in

interstate traffic : that the creature may thus lift itself above its creator. *Hall* v. *Decuir* is chiefly relied on. But in spite of the fact that congress has since assumed control of interstate railway traffic, I am bound to insist that the view taken of that case by this court is correct. That is to say, the right to navigate the great commercial highways of the nation, not being derived from the state, its regulation was beyond the power of the state ; and that the steamboat in question was, so to speak, an institution of the United States.

That this railway company was and is amenable to the laws of this state in respect to its business within the state, cannot be questioned in view of the decision in *Stone* v. *R. R. Co.*, 62 Miss.

Upon what pretense can it be maintained that in respect to the transportation of passengers, as authorized by its charter, *within the state*, the company may not be subject to regulation in the interest of the public convenience and comfort ?

The appellant is a Mississippi corporation enjoying a virtual monopoly under her laws. It is as such a corporation, dealing with its business in this state, that the act of 1888 comes in. Can it escape her authority by becoming something more besides? Can the company by running its trains across state lines escape the duties it may owe within the state creating it ? How is commerce between the states hampered or burdened by requiring the appellant to provide separate but equal accommodations *in the state for passengers within the state ?* Upon the same principle contended for by counsel it might be maintained that because the company is engaged in interstate traffic it may not be compelled to establish and stop its trains at stations in the state.

Interstate passengers are not embarrassed by requiring the company to provide, in the state, separate cars or compartments no more than interstate traffic is embarrassed by the requirement that the locomotives of the company while in the state shall be operated by engineers duly licensed under state authority. " Many acts of the state," (and this is one of them) " may indeed affect commerce without amounting to a regulation of it in a constitutional sense of the term, and it is sometimes difficult to define the distinction be-

tween that which merely affects or influences and that which regulates."

The very propositions of counsel deduced from the cases of *Sherlock* v. *Alling*, *Smith* v. *Alabama*, and *Nashville Ry. Co.* v. *Alabama*, are against their position here, because by this sort of legislation interstate commerce is only remotely and indirectly affected, and indeed need not be at all. It is a mere assumption that impediments are created or conditions prescribed in accordance with which such commerce is required to be conducted.

There is a marked distinction between the Louisiana statute and the act of the Mississippi legislature. Besides the explanation of the decision in *Hall* v. *Decuir*, furnished by this court, see the opinion of Mr. Justice Bradley in *Wabash Ry. Co.* v. *Illinois*, *supra*. According to the latter, the Louisiana statute was invalid because it compelled the proprietors of steamboats to place colored persons, traveling from one place to another in Louisiana, in a cabin set apart for white persons, many of whom were bound for other states Therefore its operation was the regulation of interstate commerce. Nothing of this kind is attempted by the statute of this state. It is perfectly immaterial what use is made of the particular cars required after the state line is passed, and immaterial whether they pass the state line at all.

It is deemed unnecessary to argue in support of the power attempted to be exercised by the legislature. This court cannot close its eyes to the condition of our people, the racial differences and distinctions, and the public history on this subject. Every one knows that the purpose of the law was to secure equal and exact justice to the negroes in traveling upon the public railways in the state. Colored people who paid full fare were compelled by railroad officials to ride in second-class coaches, and justice demanded that colored people should have equal accommodations. The civil rights bill has been declared unconstitutional, and this state of things must continue unless the states take up the subject as was done here. Congress might make similar regulations so far as interstate carriage is concerned, but is powerless when the whole journey is within the state.

In the exercise of the general police power of the state, persons and property may be subjected to all kinds of restrictions and burdens in order to secure the general comfort, health and prosperity of the state. *Thorpe* v. *R. R. Co,* 27 Vt. 150 ; *R. R. Co.* v. *Mills,* 55 Pa. St. 209 ; *Ry. Co.* v. *Williams,* 55 Ill. 185.

There is no conflict between the two acts of the legislature of 1888. The two will be construed together, and the seating of passengers as provided for in the latter act will be taken with reference to the separation prescribed in the earlier. No. repeal was intended.

Cooper J., delivered the opinion of the court.

On the 2d of March, 1888, the legislature of this state passed an act entitled, " An act to promote the comfort of passengers on railroad trains," which is as follows :

" Section 1. That all railroads carrying passengers in this state (other than street railroads) shall provide equal but separate accommodations for the white and colored races, by providing two or more passenger cars for each passenger train, or by dividing the passenger cars by a partition so as to secure separate accommodations.

Section 2. That the conductors of such passenger trains shall have power and are hereby required to assign each passenger to the car, or the compartment of a car (when it is divided by a partition) used for the race to which such passenger belongs, and should any passenger refuse to occupy the car to which he or she is assigned by such conductor, said conductor shall have power to refuse to carry such passenger on his train, and for such refusal neither he nor the railroad company shall be liable for any damages in any court in this state.

Section 3. All railroad companies that shall refuse or neglect within sixty days after the approval of this act, to comply with the requirements of section one of this act, shall be deemed guilty of a misdemeanor, and shall upon conviction in a court of competent jurisdiction be fined not more than five hundred dollars, and any conductor that shall neglect or refuse to carry out the provisions of

this act shall, upon conviction, be fined not less than twenty-five, nor more than fifty dollars for each offence."

On the first day of August, 1888, the appellant was indicted in the circuit court of Tunica county for failure to comply with section one of the act above, and in defence pleaded that it " owned and operated a continuous road running from the city of Memphis in the state of Tennessee through and across the state of Mississippi and to the city of New Orleans in the state of Louisiana, carrying on its passenger trains passengers of both the white and colored races, from Memphis and other points in the state of Tennessee, destined to New Orleans and other points in the state of Louisiana and other states in the United States, and so carrying passengers of both races from New Orleans and other points in the state of Louisiana, destined to Memphis, Tennessee, and other points in the state of Tennessee, and elsewhere throughout the United States ; that it doth now, and hath at all times and on all occasions, pro- vided equal but not separate accommodations for passengers of the white and colored races ; that to provide separate accommodations for the two races would greatly increase the cost of carrying the interstate passengers aforesaid, and greatly hinder, delay and ob- struct the defendant in making its interstate connections with other carriers of passengers, and that it hath not since long prior to the first day of May, 1888, carried any passenger in the county of Tunica, or within the limits of the state of Mississippi, save only upon its trains regularly engaged and operated in the interstate carriage of passengers aforesaid, and in all instances actually carry- ing such interstate passengers ; the right, privilege and immunity of doing which, free from any governmental regulation or control thereof, save by the congress of the United States, the defendant doth plead and claim, under article i, § 8, of the constitution of the United States ; and this the defendant is ready to verify, where- fore, etc."

To this plea a demurrer was interposed by the state, which was sustained by the court, and thereupon, a plea of not guilty being filed, there was trial and conviction, and the defendant appeals.

It is assumed by counsel for appellant that the act under con-

sideration was intended to regulate not only the transportation of passengers taken up and set down within the state, but those taken up within the state to be carried without, those taken up without to be brought within, and those taken up without to be carried across the state and into other states.

An examination of the record shows that the omission for which the indictment was found was the neglect to provide the "separate" accommodation required by § 1 of the act, and not for failing to assign to such separate car or compartment interstate travelers upon appellant's train. We are not, therefore, called upon to determine whether the legislation in question would be valid if applied to persons other than those taken up within the state to be set down within it. Confining our attention to the question necessarily involved, it being also the distinct issue presented by the plea of the company, the inquiry is whether the state is precluded from requiring separate accommodations for purely domestic travelers of different races, because to furnish the same would impose a burden upon the carrier, or because the requirement affects interstate travel upon the trains of the company.

Upon this question this court sustains the relation of an inferior tribunal, and without regard to the opinions of its members must conform to the decisions of the supreme court of the United States, by which court only can an authoritative decision be made. Without attempting to argue for or against any conclusions reached by that court, we shall endeavor only to deduce from them the principles' proper to be applied to the decision of the question involved.

The development of an immense interstate commerce, with its incidental multitude of phases and ramifications, has disclosed to the generation of this day the magnitude of the power delegated to the federal government by that clause of § 8 of art. i, of the constitution by which congress is given power "to regulate commerce with foreign nations and among the states, and with the Indian tribes."

It is not surprising that the recognition of its extent has been of gradual growth in the court called upon to construe it, nor that

in judicial utterances there have been inconsistent and conflicting expressions. It does not lie within our province to point out or criticise real or supposed inconsistencies, but taking the more recent decisions of that court, where they have limited or overruled prior cases, to apply the principles as we understand them to be now announced, to the cause before us. But it does not follow that we are to treat decisions not clearly overruled as not longer binding because remarks are to be found in later cases which, somewhat extended, may be thought to be applicable to the facts here involved.

We concede it to be settled as stated by counsel for appellant, that transportation of persons is as much commerce as transportation of property, and as a corollary that the interstate transportation of persons is interstate commerce, and that the state may not regulate such commerce since it is national in character and requires uniformity of regulation. It may also be conceded that absence of legislation by congress on the subject is indicative of its will that such commerce shall be free and untrammeled. The question returns, whether the act under consideration is a regulation of interstate commerce, and upon its solution hinges the controversy.

The cases of *Hall* v. *Decuir*, 95 U. S. 485, and *Wabash, etc., R. R. Co.* v. *Illinois*, 118 U. S. 557, are relied upon as decisive against the validity of the statute. We do not so understand them.

*Hall* v. *Decuir* was a case in which the validity of a statute of the state of Louisiana was involved. The statute, in effect, required all persons engaged within that state in the business of common carriers of passengers to admit all persons traveling on the conveyance employed in the business to equal privileges in all parts of the conveyance without discrimination on account of race or color, and a right to recover actual and exemplary damages was given to any person injured by the refusal of the carrier to comply with the law. Decuir, a passenger from one point to another within the state, was refused access to the cabin reserved for white passengers, on a steamer engaged in interstate business on the Mississippi river, and brought suit against the owner of the boat to recover damages. The statute was held unconstitutional

66 Miss.—43

by the supreme court of the United States as being a regulation of interstate commerce. As observed by this court in *Yazoo, etc., R. R. Co.* v. *Stone,* 62 Miss., the state of Louisiana had no relationship to or control over the instruments by which the commerce was conducted. It was an attempt to regulate an interstate carrier, acting under license from the United States and plying the navigable waters of the same. The state had no control over the way, the boat, or the owner. It was an attempt to regulate that which it did not create or license, and which it might neither control nor destroy. The language of the court as applied to the facts of that case is compatible with a liberal exercise by the state of power over its own corporations, which live and move and have their being by virtue of its laws. It is urged, however, that in *Wabash, etc.,* v. *Illinois, supra,* it has been held equally incompetent for the state to regulate interstate commerce conducted over artificial ways created by the state or under its authority as to regulate commerce on the navigable waters of the United States. In that case the only question presented or decided was whether a state statute controlling the rates to be charged by the common carrier for transportation of freight within the state, could be applied to a contract for continuous transportation from a point without to a point within the state. It was held that it could not, since the contract was for interstate commerce and as such not within state regulation or control.

In delivering the opinion of the court, Miller, J., reviews the cases of *Munn* v. *Illinois,* 94 U. S. 113 ; *Chicago, etc., R. R. Co.* v. *Iowa,* Ib. 155, and *Peik* v. *Chicago, etc., R. R.,* Ib. 164, and declares much that was said in them to have been decided without sufficient consideration. His criticism of those cases, was, however, confined to so much thereof as affirmed the right of the state, in the absence of legislation by congress to regulate, the transportation of property or persons from points within to points without the state. We are not warranted in extending the effect of the decision so as to include denial of the right of the state to regulate domestic transportation, though conducted by carriers engaged in interstate commerce. Indeed, the express language of the court

excludes such conclusion, for the majority opinion declares that " if the Illinois statute could be construed to apply exclusively to contracts for a carriage which begins and ends within the state, disconnected from a continuous transportation through or into other states, there does not seem to be any difficulty in holding it to be valid."

The question here is a different one from either of those involved in these cases. It is more nearly akin to that decided in *Stone* v. *Farmers' Loan and Trust Company*, 116 U. S. 307, in which the right to regulate domestic commerce was considered and upheld. It is a matter of common knowledge that there are at present many state commissions for the regulation of state commerce, and one by the general government for the regulation of that between the states. Each occupies a field from which the other is excluded and each is essential, or deemed so to be, to full control of the commerce of the country. By what authority can the transportation of domestic travelers be controlled if not by that of the state? Congress has no jurisdiction over the subject, it being confined to commerce " with foreign nations, and among the states, and with the Indian tribes." Suppose congress should deem it advisable to enact a law similar to our statute for the regulation of interstate transportation of passengers, could it be contended that it controlled as to passengers taken up and set down within a state?

But how does the statute interfere with interstate commerce, if it be true that it has no application save to those traveling wholly within the state? It is manifest from the plea that the statute is resisted because it imposes a burden not on commerce, but upon the carrier. The addition of a car at the state line to each of its trains may impose additional expense to the company, but how it is a burden upon or obstruction to commerce it is difficult to perceive. We do not know of any decision in which the supposed burden on commerce, easily obviated by the act of the corporation, has been held to invalidate a statute, in the interest of the carrier. The United States have no concern with the policy merely of domestic state laws. It may be that they are harsh, or unfair, or unjust. Admit it, and what follows? Surely not that they are invalid, but

only that they should be repealed by that power having jurisdiction of the subject.

It would seem to follow that since the transportation of passengers and of property stand upon the same footing, regulations of property within state limits being valid, regulations touching passengers of the same character, *i. e.*, domestic travelers, are also valid.

We do not think the act under consideration was repealed by § 3 of the act of March 14, 1888.

*The judgment is therefore affirmed.*