## McGuinn v. Forbes et al.

(District Court, D. Maryland. January 24, 1889.)

CARRIERS—OF PASSENGERS—DISCRIMINATION AGAINST COLORED PERSONS.

> Plaintiff, an educated colored clergyman, the holder of a first-class ticket on defendants' steam-boat, when the supper bell rang, seated himself at the table, and, on the captain requesting him to move to another table because the other passengers had complained of his presence, he refused. The captain then had another table fixed up for the other passengers, and plaintiff was left alone, his supper being furnished him. *Held*, that there was no discrimination against plaintiff on which to base a libel for damages against the owners of the boat.[1]

In Admiralty. Libel for damages.

Libel by Robert A. McGuinn, colored, against Georgeanna Williams and Matilda S. Forbes, owners, and Thomas J. Cooper, captain, of the steamer Mason L. Weems, in which $2,000 were claimed as damages for the treatment to which Mr. McGuinn was subjected on account of his color. McGuinn, who is the pastor of a colored Baptist church at Annapolis, alleged in his bill that on the 6th of July, 1887, he purchased a ticket by the Mason L. Weems for Millenbeck, Va. When

---

[1] Under the *Nebraska* statute, barber-shops cannot discriminate against a negro, and deny him any rights therein to which a white person would be entitled. Messenger v. State, 41 N. W. Rep. 638. A skating-rink carried on without any license is not such a place of public amusement as to give one excluded therefrom because he is colored a right of action against the proprietor. Bowlin v. Lyon, (Iowa,) 25 N. W. Rep. 766. The *Kentucky* homestead act of 1866 is void so far as it excludes negroes from its benefits. Custard v. Poston, 1 S. W. Rep. 434. See, also, note, Id. A state law making it a misdemeanor to exclude citizens of the state from places of amusement by reason of race, color, or previous condition of servitude, is a valid exercise of the police power of the state. People v. King, (N. Y.) 18 N. E. Rep. 245. A state law directing the distribution of taxes levied for school purposes, so as to discriminate in favor of the schools for white children, and against the schools for colored children, is void. Claybrook v. Owensboro, 16 Fed. Rep. 297, 23 Fed. Rep. 634. Separate schools may be provided for colored children, but they must afford substantially equal advantages with those for white children. U. S. v. Buntin, 10 Fed. Rep. 730. See, also, for a discussion of civil rights laws and legislation, extensive note, Id.; Smoot v. Railway Co., 13 Fed. Rep. 337; The Civil Rights Cases, 3 Sup. Ct. Rep. 18.

the supper bell rang, he seated himself at the table, and, upon his refusal to move, the food and dishes were removed to another table, the passengers all taking seats at that table, and leaving him alone. Afterwards the passengers threatened him, which was the cause of his leaving the boat eight hours before reaching his destination. Mr. McGuinn testified that he was not told any arrangements had been made for supper, and he went to the table in response to the supper bell. A waiter motioned him to a seat, and took his order. The captain requested him to move to another table, and attempted to move his chair, but he refused to allow this, as he had purchased a first-class ticket. The captain then requested the other passengers to take the other table, which they did. The captain told him the passengers had complained of his presence, and had it not been for him (the captain) they would have handled him roughly. Afterwards McGuinn was assaulted by one of the passengers, and threats were made to pitch him overboard. In consequence of this he did not retire for the night, but remained in the saloon, and got off at Monaskon instead of at Millenbeck, whence he took a vehicle to his destination. He was told when he bought his ticket that the boat did not stop at Millenbeck on the up-trip, but would stop coming down. As he had plenty of time, he had intended to remain on the boat. He saw no officers of the boat after supper. Henry Williams, colored, who was steward of the steamer at the time, saw McGuinn when he took his seat at the table. There were two gentlemen and one lady also at the table. He saw the captain speak to McGuinn, and he removed the others to another table by the captain's orders. Afterwards McGuinn came to him, and inquired if there was any protection for passengers, and asked for the captain. All the tables on the boat were the same, and no difference was made. Capt. Cooper, who commanded the Mason L. Weems at the time, but who now has charge of the Theodore Weems, said he saw McGuinn at the table, and wondered why so few passengers were taking supper. Complaint was made to him that a colored man was at the table. He asked McGuinn if he would please move to another table, and, upon his refusing to do so, he instructed the steward to fix the other table for the rest. McGuinn told him he had paid first-class fare. The captain said he was unaware of any indignity offered McGuinn, and told the passengers to let him alone. The boat only stops at Millenbeck on the down-trip. A passenger for Millenbeck can get off at Monaskon between 6 and 7 o'clock in the morning, and get to Millenbeck in a couple of hours by walking, which is the usual way; otherwise they would not arrive until 3 or 4 o'clock in the afternoon. John Dare, the clerk of the boat, testified that three or four passengers came to him, and told him a colored man was at the table, and they would not sit down, and he acquainted the captain with the fact. A. W. Creet, a passenger at the time, saw the saloon full of passengers, and saw them move to another table, but witnessed no trouble. Manager Williams, of the Weems Line, testified that no difference is made in the treatment of passengers, although the colored passengers are assigned certain seats, and it is endeavored to keep them to themselves.

*E. J. Waring,* for libelant.
*T. H. Thomas,* for respondents.

MORRIS, J.　In cases of a similar class which have come before this court I have decided that when a first-class price is demanded and paid, the persons paying that price must have the same accommodations, and there must be a *bona fide* effort on the part of the carrier to furnish the same accommodations.　*The Sue,* 22 Fed. Rep. 843.　When public sentiment demands a separation of the passengers, it must be gratified to some extent.　While this sentiment prevails among the traveling public, although unreasonable and foolish, it cannot be said that the carrier must be compelled to sacrifice his business in order to combat it.　Within reasonable limits the carrier must be allowed to manage his own affairs. In this case, although the petitioner suffered some discomfort and humiliation, he was not obliged to leave the table, and his supper was served, and I do not find that he was discriminated against in any manner which can be made the ground of a legal action.　It was foolish and unreasonable, as I have said, in the other passengers to object to sit at the same table with this libelant, who is a well-behaved, educated minister of the Christian religion, simply because he may have negro blood in his veins, but the owners of the steam-boat cannot be held responsible in damages for that.　There is some ground for a suspicion that the petitioner was not sufficiently protected by the officers of the steam-boat from the threats and indignities at the hands of certain passengers, but the proof fails to establish it, and they testified that they did all they could to prevent it. I therefore must dismiss the libel, but without costs.