NATHAN McMILLAN v. THE SCHOOL COMMITTEE OF DISTRICT No. 4 (CROATAN).

*Mandamus — Public Schools — Constitution — Separate Schools for Each Race—Croatan Indians—Slaves—Negroes—"Generation"—Board of Education—School Committee.*

1. The Legislature is not prohibited by the Constitution from providing separate schools for the Croatan Indians, and the Act of 1885, ch. 51, and the Act of 1889, amendatory thereof, providing such schools, are valid.

2. The Legislature has power, outside of the constitutional grant, to classify pupils according to race.

3. Where it was admitted that the plaintiff, whose children were excluded from school, was a slave before 1865, the charge of the Court below that he was presumed to be a negro is correct.

4. "Generation," as used by the statute, means a single succession of living beings in natural descent; and if, by tracing back four successive generations, through father or mother, we reach a negro ancestor of the plaintiff's children, they are excluded from the Croatan schools by the act establishing them.

107—39

McMILLAN v. SCHOOL COMMITTEE.

5. The order of the Board of Education that plaintiff's children be admitted into the Croatan school furnishes no warrant for such admission when contrary to law.

6. Where the plaintiff, by *mandamus*, attempted to compel the admission of his children into a public school established for the Croatan Indians, there was evidence that plaintiff's father was a white man, and his wife, the mother of the children, was a Croatan Indian, and that the plaintiff was a slave before 1865. The plaintiff asked the Court to charge, in effect, that, if the jury believed the evidence, their answer should be that the plaintiff's children were not negroes. The Court refused, but charged that, if the plaintiff was a slave, there was a presumption that he was a negro: *Held*, no error.

Proceeding in *mandamus*, before *Shipp, J.,* at Fall Term, 1889, of ROBESON Superior Court, brought by plaintiff to compel the admission of his children into a school taught in what was known as School District No. 4.

J. A. McAllister, witness for plaintiff, testified that he was Superintendent of Public Instruction for the County, and that plaintiff complained to him that defendants refused to receive his children into the school. The County Board of Education had charge of all the schools in the county, white and colored, and in accordance with the act of 1885, giving to the Croatan Indians in Robeson County separate schools, caused the census of said Indians to be taken and the school districts laid off for them; that plaintiff's children were not included in said census.

Plaintiff offered in evidence the following paper, which was excepted to by defendants, but allowed by the Court:

"It is ordered by the Board of Education that Nathan McMillan be assigned to Croatan District No. 4, and the committee of said district are hereby directed to receive his children into the public schools of said district. By order of the Board of Education.

"This September 3d, 1888

(Signed)     "J. A. McALLISTER, *Clerk*."

Witness said the signature was his, and he thought the order had been read to the Board of Education. No order in relation to the matter was ever recorded in the minutes, but he stated that all the orders of the Board are recorded in a book kept for that purpose. The Board took no vote on the matter. It was done simply to try to arrange the differences between them, without intending that it should be enforced as an official order. The Board did not pass upon the question as to whether plaintiff's children were Croatan Indians, and plaintiff does not claim to be a Croatan Indian ; reputation is that plaintiff was a slave ; it was stated that his wife was a Croatan and lived in the district. Prior to the passage of said act, the children of Croatan Indians were assigned to colored schools. The territory in which the plaintiff lives is both a Croatan and colored school district, and equal school facilities for each class, as convenient as possible for each.

S. E. Barton, witness for plaintiff, testified that the wife of plaintiff is a Croatan, and sister of one of the defendants ; witness says that plaintiff says he is not a Croatan. Plaintiff's father was a white man.

Defendants except to the testimony introduced to the effect that the class now called Croatans were called mulattoes before the act was passed.

D. C. McMillan, witness for the defendants, testified that the plaintiff was a slave and belonged to his father, and that he never knew Croatans to be slaves.

There was testimony of other witnesses to the same effect.

The following issues were submitted to the jury.

"1. Are plaintiff's children Croatan Indians? Answer—No

"2. Were plaintiff's children included in the census taken under the Act of 1885? Answer—No.

"3. Are plaintiff's children of negro blood within the fourth degree? Answer—Yes.

"4. Did the Board of Education of Robeson County order plaintiff's children to be received in said school? Answer—Yes."

The plaintiff asked the following instructions:

"That if the jury believe the evidence as to the children of Nathan McMillan being negroes within the fourth generation, their answer should be in the negative as to the third issue."

The Court declined to give the instruction, except in so far as it was given in the charge, and charged the jury as follows:

"That it being admitted that plaintiff himself was not a Croatan Indian, but only his wife, they must answer the first issue No. They must be guided by the evidence as to the second issue, and that the main issue was the third, and they must determine from the whole testimony as to the third issue. If they believe from the testimony that plaintiff was a slave, the law would raise a presumption that he was a negro, it being a matter of common knowledge that none but negroes were slaves in this country. In order to find that the children of plaintiff are of negro blood within the fourth degree, they should consider that from the children to the father, the plaintiff, is one degree; from plaintiff to parent would be the second degree; from children to grandparent would be the third degree, and from children to great-grandparent would be the fourth degree; and if they believe from the evidence that plaintiff's father was a white man, they must also be satisfied from the evidence that plaintiff's mother was a negro, in order to make plaintiff's children negroes within the fourth degree, and thus within the prohibition of the Croatan Act above mentioned. If, from the whole testimony, they are satisfied that plaintiff's children are negroes within the fourth degree, they will answer the third issue Yes; otherwise, No; they will answer the fourth issue Yes."

Plaintiff moved for a new trial for refusal to give the instruction asked. Motion denied, and plaintiff excepted. Motion for judgment on fourth issue *non obstante veredicto*. Motion denied. Plaintiff excepted. and appealed from the judgment rendered.

*Messrs. T. A. McNeill* and *J. D. Shaw,* for plaintiff.
*Mr. William Black,* for defendants.

AVERY, J —after stating the case: We think that the Legislature was not prohibited by the Constitution from providing separate schools, to be governed by committees of their own race, and taught by teachers selected by such committees, for those persons, now residing in Robeson County, who claim to be descendants of the friendly tribe of Indians known as Croatans, and that the Act of 1885, chapter 51, as amended by chapter 60 of the Laws of 1889 (which amendatory act excludes all negroes "to the fourth generation" from the privilege of attending said schools), is valid, and should be enforced.

If it had not been provided in section 2, Art. 9 of the Constitution that the children of the white race should be taught in schools separate and distinct from those in which children of the colored race should receive instruction, but that there should be no discrimination in favor of, or to the prejudice of, either race, the same end might have been attained by enacting a statute embodying similar provisions, just as intermarriages between whites and negroes, or Indians, "to the third generation," were prohibited by the Act of 1871–'72, ch. 193, § 2 (Bat. Rev., ch. 69, § 2), which was enforced before the Convention of 1875 provided, by section 8, Art. 14 of the Constitution, that "all marriages between a white person and a negro, or between a white person and a person of negro descent to the third generation inclusive," should be forever prohibited. *State* v. *Hairston,* 63 N. C.,

451; *State* v. *Kennedy*, 76 N. C., 251; *State* v. *Watters*, 3 Ired., 455; *State* v. *Reinhardt*, 63 N. C., 547. The right of the Legislature to enact such laws, in pursuance of the Constitution, as shall give to the children of the white and colored races equal educational advantages, but in separate schools, has been recognized and declared by this Court. *Puitt* v. *Commissioners*, 94 N. C., 709. Railroad companies may assign to white and colored passengers different coaches, as innkeepers may furnish them separate apartments, provided they furnish equal accommodations to both. *Britton* v. *Railroad*, 88 N. C., 536; *State* v. *Steele*, 106 N. C., 782. The laws under which the Croatan schools were started gave to the children of that race equal advantages with the children of the colored race, requiring that the census should be taken in the same way, and the school money divided according to numbers, for the benefit of the children of the three, instead of two, races. It was in evidence, and admitted, that the plaintiff's children resided within a school district in which there was a school for negro children, and they would have been admitted into that school had they applied. The plaintiff is not calling in question the power of the Legislature to provide separate schools for three distinct races, but, on the contrary, he insists only that his children have been classified improperly, and have not been given the opportunity to associate with others of the same caste in the Croatan school, his home being also within the geographical limits of their district. Where the statute of New York allowed the board of education to adopt regulations for the admission of pupils, so that they assigned all to schools affording equal advantages, and a colored man sought by *mandamus* to compel the admission of his children to a school where white children were taught, instead of that for colored children, to which they were assigned by the board, the two schools affording equal advantages, the Supreme Court of New York refused the *mandamus*, among other rea-

sons, because a citizen was not allowed to select the school which his children should attend, in the face of a reasonable regulation made by the board by authority of law. *Dietz* v. *Easton,* 13 Abbott's Pr. R., 164 and 165.

In the case of *Games* v. *McCann,* 21 Ohio, 210, Judge Day, delivering the opinion of the Court, says: "Equality of rights does not involve the necessity of educating white and colored persons in the same school, any more than it does that of educating children of both sexes in the same school, or that different grades of scholars must be kept in the same school. Any classification which preserves substantially equal school advantages is not prohibited by either the State or Federal Constitution, nor would it contravene the pro- visions of either."

It is clear that, if the Legislature could give, by law, the power to an educational board to classify pupils according to race, as well as according to sex, the law itself could be so framed as to indicate, in general terms, upon what prin- ciple a board or committee should proceed in making a classification, and to secure equal advantages for each class. It is evident that there was a just division of the school fund among the three classes, that school-houses were built, and teachers employed to open schools in them in reach of each class. The law was constitutional, and the board of education, with the co-operation of the school committee, seem to have acted fairly and justly in carrying out its pro- visions.

But the plaintiff insisted that, in some aspects, if not in any phase of the evidence, his children were shown to be Croatans and entitled to admission into their schools. Gen- eration, as used in the statute, means "a single succession of living beings in natural descent." If, by tracing back four successive generations, through father or mother, we reach a negro ancestor of the plaintiff's children, then they are excluded, by the terms of the Act of 1889, from the schools

established for the persons whose claim to descent from the Croatan Indians has been recognized by the Legislature. The contention of counsel that generation is used in the sense of degree cannot be sustained. It is true that jurors related within the ninth degree to one of the parties were declared subject to challenge, as at common law in this State. State v. Perry, Busb., 330. But, as the word "generation" has no technical meaning, we must consider it as used in the sense of a succession—its ordinary import—rather than of a degree of removal in computing descents. It being admitted that the plaintiff, whose children were excluded,.was a slave before the year.1865, we think that the charge that he was presumed to be a negro was unquestionably correct. While they were in bondage there was no such thing known among the slaves as computing degrees of removal from white ancestors. For all purposes, the law regarded them all as negroes. If the plaintiff's children would be entitled to enter the separate schools of the Croatans upon any proof, in the face of the admission that he himself was a slave, the burden was on him to furnish the evidence, and he cannot complain of the ruling of the Court which gave him the opportunity to do so. The jury found, under proper instructions, that the children of the plaintiff were not Croatans, that they were not included in the enumeration of the Croatans in taking the census under the act, and that they were, in fact, negroes within the fourth generation. But, in response to the fourth issue, they found that, though they were negroes, the Board of Education issued an order that they should be admitted into the Croatan school, and the plaintiff assigns as error the refusal of the Court below to render judgment in his favor upon the verdict. We have held, for reasons already given, that the Legislature had the power to pass an act classifying schools according to race, to provide separate schools for the Croatans, and to prohibit the admission into them of any negro "to the fourth genera-

tion." The Board of Education might make regulations for the government of schools if the law gave the power to do so, but they were not authorized to override the law and compel the committee, in the face of the prohibition of the Act of 1889, to admit children of negro blood "to the fourth generation" into the Croatan school. It seems that the General Assembly, after the recitation contained in the preamble to the Act of 1885 of the claim of the persons living in Robeson County, concluded to recognize that claim and act upon it. The plaintiff himself insists that his children be allowed, as Croatans, to attend the separate schools provided for by the Acts of 1885 and 1889. We will not consider the testimony tending to show that those persons (the Croatans) were, in fact, of negro descent, or were formerly called mulattoes.

For the reasons given, we think there was no error in the charge and rulings of his Honor upon which the assignment of error was predicated, and the judgment must be affirmed.

No error.