Morrison v. State.

## MARY MORRISON v. STATE.

### (*Jackson.*   April Term, 1905.)

1. **POLICE POWER.** Inherent and vested in the States before the federal union was not granted to the federal government, and remains in the States to be exercised for what.

The police power inherent in the States was vested in them before the formation of the union or the federal compact, and not being among the enumerated powers granted to the federal government, it was reserved by the States to be exercised and administered, within their respective jurisdictions, for the preservation and promotion of the public order, the public welfare, and the public safety, and for the establishment of such rules and regulations, for the conduct of all persons, as may be conducive to the public interest. (*Post, pp.* 542-550.)

Cases cited and approved: Theilan v. Porter, 14 Lea, 626; Webster v. State, 110 Tenn., 504; Martin v. Hunter, 1 Wheat., 304; Gibbons v. Ogden, 9 Wheat., 1; License Cases, 5 How., 504; Prigg v. Pennsylvania, 16 Pet., 539; Barbier v. Connolly, 113 U. S., 27; Mugler v. Kansas, 123 U. S., 623.

2. **CONSTITUTIONAL LAW.** Statute requiring separation of white and colored passengers on street cars is not unconstitutional for that reason.

The statute (Acts 1905, ch. 150) requiring the separation of the white and colored passengers on street cars is a proper police regulation, and is not violative of the State constitution (art. 1, secs. 7 and 8; art. 11, sec. 8), nor of the federal constitution (am. 4th, 5th, and 14th), as abridging the privileges and immunities of the citizen and depriving him of the equal protection of the laws. (*Post, pp.* 542-550.)

Acts cited and construed: 1905, ch. 150.

Constitution cited and construed: Art. 1, secs. 7 and 8; art. 11, sec. 8 (State); am., 4th, 5th, and 14th (U. S.).

Cases cited and approved: See first headnote (supra) and opinion (*post, pp.* 549, 550.)

3. **SAME.** Statute requiring separation of white and colored passengers on street cars is not unconstitutional because it excepts nurses.

The statute (Acts 1905, ch. 150) requiring the separation of the white and colored passengers on street cars, but providing that it shall not apply to nurses attending children or helpless persons of the other race, is not unconstitutional as arbitrary class legislation, for the reason that the classification is natural and reasonable. (*Post, pp.* 550-552.)

Acts cited and construed: 1905, ch. 150, sec. 1.

Constitution cited and construed: Art. 11. sec. 8.

Cases cited and approved: Smith v. State, 100 Tenn., 494; Plessy v. Ferguson, 163 U. S., 537, 541; Magoun v. Bank, 170 U. S., 283; Railroad v. Kentucky, 179 U. S. 388; Croom v. Schad (Fla.), 40 South., 495; Dell v. Marvin, 41 Fla., 221; State, ex rel., v. Terminal Co. (Fla.), 27 South., 221; Anderson v. Railroad, (C. C.), 62 Fed., 46.

4. **SAME.** Statute requiring separation of white and colored races on street cars is not unconstitutional because it authorizes conductors to change line of division and assignment of seats.

The statute (Acts 1905, ch. 150) requiring the separation of the white and colored races on street cars is not unconstitutional, because it authorizes the conductors in charge of the cars to change the line of division in cars, and to assign seats to passengers in accordance with such change, for this is not an unlawful delegation of the police power to the agents of street car companies, in violation of the constitutional provision (art. 7, secs. 4 and 5; art. 11, sec. 17) as to the manner in which officers shall be elected, but is a requirement of the exercise of a power already existing by the common law in street car companies. (*Post, pp.* 552-554.)

Acts cited and construed: 1905, ch. 150; sec. 2.

Constitution referred to: Art. 7, secs. 4 and 5; art. 11, sec. 17.

Case cited and approved: Patterson v. Taylor (Fla.), 40 South., 495.

Morrison v. State.

5. **SAME.** Statute for separation of white and colored passengers on street cars is not invalidated by exception of nurses, and delegation of authority to car conductors to change line of division and to change seats, even if these provisions were void.

The provision in the statute (Acts 1905, ch. 150) for the separation of the white and colored races on street cars that nurses attending children and helpless persons of the other race shall be excepted from its operation, and the provision that conductors in charge of cars shall have authority to change the line of division in the cars and to assign seats in accordance with the change, are both mere incidents to the real object of the statute, severable from it, and the law would have been enacted without them, and if they were void, the rest of the statute is not vitiated thereby. (*Post, pp.* 550, 551, 552.)

Acts cited and construed: 1905, ch. 150; secs. 1 and 2.

Case cited and approved: Lindsay v. Allen, 112 Tenn., 638.

6. **SAME.** Statute for separation of white and colored passengers on street cars is not unconstitutional as a deprivation of property rights and privileges without due process of law in requiring change of seats or to leave car, and misdemeanor for failure.

The statute (Acts 1905, ch. 150) for the separation of white and colored passengers on a street car is not unconstitutional as depriving citizens of their property, rights, and privileges without due process of law, because it requires passengers of the two races to take the seats or places assigned them respectively in the first instance, or by direction of the conductor, upon a change of the line of division made by him, and upon refusal to do so, to leave the car, or be guilty of a misdemeanor. (*Post, pp.* 554-556.)

Acts cited and construed: 1905, ch. 150, sec. 3.

Constitution cited and construed: Art. 1, sec. 8 (State); am., 4th, 5th and 14th (U. S.).

Cases cited and approved: Plessy v. Ferguson, 163 U. S., 537; Patterson v. Taylor (Fla.), 40 South., 495.

Morrison v. State.

FROM SHELBY.

Appeal from the Criminal Court of Shelby County.—
JOHN T. MOSS, Judge.

B. F. BOOTH and J. T. SEATTLE, for Morrison.

ATTORNEY-GENERAL CATES, for State.

MR. JUSTICE SHIELDS delivered the opinion of the
Court.

This case involves the constitutionality of an act of
the general assembly of Tennessee, passed April 4, 1905
(Acts 1905, p. 321, c. 150), for the promotion of the com-
fort of the public on street cars, by requiring the separa-
tion of the white and colored races. The entire act is
assailed, and we set it out in full. The caption and body
are as follows:

"Chapter 150. An act to promote the comfort of pub-
    lic travel by providing for and securing the separa-
    tion of white and colored passengers on street cars.

"Section. 1. Be it enacted by the general assembly
of the State of Tennessee, that all persons, companies
or corporations operating any street car line or lines in
the State of Tennessee be, and the same are, hereby re-
quired, where white and colored passengers are carried

or transported in the same car or cars, to set apart or designate in each car or cars so operated for both a portion thereof or certain seats therein to be occupied by white passengers, and a portion thereof or certain seats therein to be occupied by colored passengers. Provided, that nothing in the act shall be construed to apply to nurses attending children or other helpless persons of the other race. Provided, that large printed or painted signs shall be kept in a conspicuous place in the car or cars, or the parts thereof set apart or designated for the different races, on which shall be printed or painted, if set apart or designated for the white people, and it being a car so designated and set apart: 'This car for white people.' If a part of the car is so designated, then this sign: 'This part of the car for white people.' If set apart or designated for the colored race, this sign is to be displayed in a conspicuous place, as follows: 'This car for the colored race.' If any part of a car is set apart or designated for said race, then this sign, as follows: 'This part of the car for the colored race.'

"Sec. 2. Be it further enacted, that the conductor or other persons in charge of any car or coach so operated upon any street car line shall have the right at any time, when in his judgment it may be necessary or proper for the comfort or convenience of passengers so to do, to change the said designation so as to increase or decrease the amount of space or seats set apart for either race, or he may require any passenger to change his seat when

or so often as the change in the passengers may make such change necessary.

"Sec. 3. Be it further enacted, that all passengers on any street car line shall be required to take the seats assigned to them, and any person refusing so to do shall leave the car, or, remaining upon the car, shall be guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not to exceed twenty-five dollars. Provided, no conductor shall assign any person or passenger to a seat except those designated or set apart for the race to which said passenger belongs.

"Sec. 4. Be it enacted, that any person, company or corporation, failing to separate or designate separate portion of the cars operated for the separate accommodation of the white and colored passengers, as provided by this act, shall be guilty of a misdemeanor, and upon conviction shall be fined in any sum not to exceed twenty-five dollars.

"Sec. 5. Be it further enacted, that nothing in this act shall be construed to prevent the running of extra or special cars for the exclusive accommodation of either white or colored passengers, if the regular cars are operated as required by this act.".

The Memphis Street Railway Company, operating a street car system in the city of Memphis, complied with the provisions of this statute, setting apart certain seats in the rear of its cars for colored passengers and others in the front end for white passengers, properly designated. The plaintiff in error took one of the seats set apart

for white people, and, upon request of the conductor in charge of the car, refused to vacate it and occupy one set apart for persons of her race.   For this violation of the statute in queston, she was indicted under section 3 thereof, in the criminal court of Shelby county.   Through her counsel, she entered a motion to quash the indictment, averring that the statute upon which it is predicated violates the constitutions of the United States and of Tennessee in particulars and for reasons specifically stated in the motion, which is in these words:

"First.   Because the indictment in this case is predicated upon an act of the general assembly of the State of Tennessee, passed March 39, 1905, and approved April 4, 1905, and known as the 'Jim Crow Street Car Law,' which said act is unconstitutional and void, and is violative of the constitution of Tennessee and the constitution of the United States, and particularly violates article 1, sections 7 and 8, and article 11, section 8, of the constitution of Tennessee, and the fourth, fifth, and fourteenth amendments to the constitution of the United States.

"Second.   Section 1 of said act violates article 11, section 8, of the constitution of the State of Tennessee, because it is class legislation.   It creates a provision within which all citizens belonging to the class referred to cannot bring themselves.

"Third.   Section 2 of said act is unconstitutional, because it violates article 2, section 1, of the constitution of Tennessee, in that it attempts to delegate police

power and authority to any person who may happen to be in charge of a car without the constitutional requirements as to election or appointment and qualification.

"This act also violates article 1, section 8, of the constitution of Tennessee, and fourth, fifth, and fourteenth amendments to the constitution of the United States, in that it provides for a forfeiture of a property right and privilege purchased and paid for at the discretion of the person in charge of the car, without due process of law, without return of the price paid for it."

This motion was overruled, the case by consent of parties tried by the court without the intervention of a jury, and the plaintiff in error found guilty and fined. From that judgment she has prosecuted an appeal, in the nature of a writ of error to this court, and now assigns as error the action of the trial judge in overruling her motion to quash the indictment. It is conceded that the facts fully sustain the conviction, and the sole contention made is that the statute upon which the indictment is based is invalid.

The first specification of the motion challenges the validity of the statute upon the ground that it violates article 1, sections 7, 8, and article 11, section 8, of the constitution of Tennessee, and the fourth, fifth, and fourteenth amendments of the constitution of the United States.

The gist of the contention here made, as we understand it, is that the statute in question abridges the

privileges and immunities of the citizen and deprives him of the equal protection of the laws.

The police power under which this statute was enacted is one of the inherent powers of all sovereign States. The commonwealths composing the United States were vested with this power when they entered into the federal compact, and, not being among the enumerated powers granted to the general government, it was reserved by the States to be exercised and administered within their respective jurisdictions. *Martin* v. *Hunter,* 1 Wheat. (U. S.), 304, 4 L. Ed., 97; *Gibbons* v. *Ogden,* 9 Wheat. (U. S.), 1, 6 L. Ed. 23; *In re Licenses Cases,* 5 How. (U. S.), 504, 12 L. Ed., 256; *Prigg* v. *Pennslyvania,* 16 Pet. (U. S.), 539, 10 L. Ed., 1060.

The amendments to the constitution, since its adoption originally by the States, and especially the fourteenth amendment, have been held not to in any way interfere with the States in the exercise of this power. *Barbier* v. *Connolly,* 113 U. S., 27, 5 Sup. Ct., 357, 28 L. Ed., 923; *Mugler* v. *Kansas,* 123 U. S., 623, 8 Sup. Ct., 273, 31 L. Ed., 205.

The limits of this power are comprehensive and difficult to define, but there are many subjects which all the authorities agree are included in it.

Judge Cooley says: "The police power of a State, in a comprehensive sense, embraces its system of internal regulation, by which it is sought, not only to preserve the public order and to prevent offenses against the State, but also to establish, for the intercourse of citizen

with citizen, those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to secure to each the uninterrupted enjoyment of his own, so far as it is reasonably consistent with a like enjoyment of rights by others." Cooley's Constitutional Limitations (6 Ed.), 704.

In an able article on Constitutional Law, in a valuable work now being published, this terse yet comprehensive statement of the police power is made: "Police power is the name given to that inherent sovereignty which it is the right and duty of the government or its agents to exercise, whenever public policy, in a broad sense, demands for the benefit of society at large regulations to guard its morals, safety, health, order, or to secure in every respect such economic conditions as an advancing civilization of a higher complex character requires." 8 Cyc., 863.

It is also said in the same article (page 871) : "It is the duty of the police power to adopt all measures necessary for the preservation of the rights of person and property from unlawful violence and disorder, and for the maintenance of peace and quiet."

In speaking for this court in *Webster* v. *State,* 110 Tenn., 504, 82 S. W., 179, Mr. Justice Wilkes, upon this subject says: "This legislation has been based upon what is known as the 'police power' of the government— a power the proper exercise of which has been said by this court to be essential to the safety and tranquility of every well-ordered community. *Theilan* v. *Porter,* 14

Lea, 626, 52 Am. Rep., 173. This police power extends over a large range of subjects—the public health, the public morals, the public safety, the public welfare—under any one of which the regulation and restriction of the sale of intoxicating liquors would readily fall. The courts have wisely refrained from prescribing limits to the exercise of the police power by the government; and it has been held to embrace all such legislation as will preserve and promote the public welfare by prohibiting all things hurtful to the comfort, safety, and welfare of society, and the establishing of such rules and regulations for the conduct of all persons and the use and management of all property, as may be conducive to the public interest."

The congress of the United States we have seen, cannot exercise this power, except when legislating for the District of Columbia and the Territories. The States must exercise it. They must, in the discharge of their governmental functions and obligations to their inhabitants, make and enforce all such laws and regulations proper and necessary, considering the conditions prevailing in their respective boundaries, for the promotion of good morals, the health, comfort, convenience, and safety of the general public, the preservation of peace and order, the protection of life and property, and the prevention of disorder and violence; and, so long as the measures adopted by them for these purposes, are proper and reasonable police regulations, and violate no funda-

mental law, their action in these matters is subject to no restrictions.

The widely variant conditions existing in the several States, the product and inevitable result of their different climatic conditions, populations, and the lineage, racial distinctions, customs, usages, traditions, and avocations of such populations, their sources of wealth, and material interests, which are best known to and understood by their own governmental agencies, and with which they are better fitted and prepared to cope, require that a clear and unmistakable case of violation of the supreme law be made to appear in order to authorize any interference with their exercise of this power in the control of their own internal affairs.

The regulation of common carriers which includes that of the general public while patronizing the conveyance of the carrier, is one of the most common and important subjects to which the police power applies. From the earliest days of the construction and operation of both commercial and street railways for the transportation of passengers, it has been considered that reasonable and proper rules for the government of the conduct of the companies, or owners operating them, and the regulation of the general public while using them, are absolutely necessary for the promotion of the safety, comfort and convenience of the public and the prevention of disturbances and breaches of the peace.

This statute was enacted, it must be presumed, in good

116 Tenn.—35

faith for these purposes. Its enactment was required by the conditions existing in this State, growing out of the fixed and unchangeable relations and differences of the two races mainly composing its population (which are common knowledge, judicially known to the court, and proper to be considered in determining the reasonableness or unreasonableness of a police regulation), and is wisely intended and designed to promote the interests of both of them.

The chief feature of the statute is that requiring the separation of the white and colored races. The propriety and necessity for the separation of the white and colored races in Tennessee and other States, where the two races are something like equally divided in numbers, for the material benefit of both of them, is now conceded by all persons conversant with the conditions existing in these States. Indeed, it was conceded at the bar by counsel for plaintiff in error, who are of her own race. It violates the rights of no one. It deprives no one of any privileges or immunities to which they are entitled by virtue of any law. It does not discriminate against either race, but applies to both with equal force and effect. Both are subjected to the same restraints, and afforded equal privileges and accommodations, and it is firmly established that such legislation violates no principle of organic law, and is valid and enforceable as a proper and reasonable exercise of the police power.

In the case of *Plessy v. Ferguson*, 163 U. S., 537, 16 Sup. Ct., 1138, 41 L. Ed., 2456, in which the constitu-

Morrison v. State.

tionality of a statute of Louisiana, authorizing the separation of the races upon commercial railroads, was called in question and sustained. Mr. Justice Brown, speaking for the supreme court of the United States, said: "The object of the amendment [referring to the fourteenth amendment to the constitution of the United States] was undoubtedly to enforce the absolute equality of the two races before the law; but in the nature of things, it could not have been intended to abolish distinctions based upon color, or to enforce social, as distinguished from political, equality, or a commingling of the two races upon terms unsatisfactory to either. Laws permitting, and even requiring, their separation, in places where they are liable to be brought into contact, did not necessarily imply the inferiority of either race to the other, and have been generally, if not universally, recognized as within the competency of the State legislatures in the exercise of their police power. The most common instance of this is connected with the establishment of separate schools for white and colored children, which have been held to be a valid exercise of the legislative power, even by courts of the States where the political rights of the colored race have been longest and most earnestly enforced."

And again, on page 550 of 163 U. S., page 1143, 16 Sup. Ct. (41 L. Ed., 256), he says: "So far, then, as a conflict with the fourteenth amendment is concerned, the case reduces itself to the question whether the statute of Louisiana is a reasonable regulation, and with re-

spect to this there must necessarily be a large discretion on the part of the legislature. In determining the question of reasonableness, it is at liberty to act with reference to the established usages, customs, and traditions of the people, and with a view to the promotion of their comfort and the preservation of the public peace and good order. Gauged by this standard, we cannot say that a law which authorizes, or even requires, the separation of the two races in public conveyances is unreasonable, or more obnoxious to the fourteenth amendment than the acts of congress requiring separate schools for colored children in the District of Columbia, the constitutionality of which does not seem to have been questioned, or the corresponding acts of the State legislatures."

This statute is merely an extension to street railways of one that has long been in force in this State, regulating the transportation of passengers upon commercial railroads, which, upon full consideration, was sustained by this court. *Smith* v. *State,* 100 Tenn., 494, 46 S. W., 566, 41 L. R. A., 432.

Similar statutes, authorizing and requiring the separation, with equal privileges and accommodations, of the two races affected by this act, designated therein as the white and colored races, upon public conveyances, in schools and places of amusement open to the public generally, in all or part in these relations, have been passed in many of the States of the union in the regulation of their internal affairs, and by congress of the

United States in legislating for the District of Columbia. These statutes have nearly all been assailed, in both the State and federal courts, and subjected to almost every conceivable constitutional test, including the objections made by the plaintiff in error to the one now under consideration, and without exception, so far as has been called to our attention, the objections made to them have been held to be without merit, and the statutes assaulted constitutional and valid.

Among other cases in which these questions have been raised and adjudged are the following:

Public conveyances: *Chesapeake & Ohio Ry. Co.* v. *Wells,* 85 Tenn., 614, 4 S. W., 5; *Memphis & Charleston R. R. Co.* v. *Benson,* 85 Tenn., 627, 4 S. W., 5, 4 Am. St. Rep., 776; *Smith* v. *State,* 100 Tenn., 494, 46 S. W., 566, 41 L. R. A., 432; *Plessy* v. *Ferguson,* 163 U. S., 537, 16 Sup. Ct., 1138, 41 L. Ed., 256; *Louisville, New Orleans, etc., Ry. Co.* v. *Mississippi,* 133 U. S., 587, 10 Sup. Ct., 348, 33 L. Ed., 784; *Chesapeake & Ohio Ry. Co.* v. *Kentucky,* 179 U. S., 388, 21 Sup. Ct., 101, 45 L. Ed., 244; *Logwood* v. *Memphis, etc., R. R. Co.* (C. C.), 23 Fed., 318; *McGuinn* v. *Forbes* (D. C.), 37 Fed., 639; *Houck* v. *Sou. Pac. Ry. Co.* (C.C.), 38 Fed., 226; *Anderson* v. *Louisville, etc., R. R.* Co. (C. C.), 62 Fed., 46; *West Chester, etc., R. R. Co.* v. *Mills,* 55 Pa., 209, 93 Am. Dec., 744; *Day* v. *Owen,* 5 Mich., 520, 72 Am. Dec., 62; *Chicago, etc., Ry. Co.* v. *Williams,* 55 Ill., 185, 8 Am. Rep., 641; *Donnell* v. *State,* 48 Miss., 661, 12 Am. Rep., 375;

*Patterson* v. *Taylor* (Fla.), 40 South., 495; *Crooms* v. *Schad* (Fla.), 40 South., 497.

Separate schools: *Roberts* v. *Boston,* 5 Cush. (Mass.), 198; *People* v. *Gallagher,* 93 N. Y., 438, 45 Am. Rep., 232; *State* v. *McCann,* 21 Ohio St., 195; *Ward* v. *Flood,* 48 Cal., 36, 17 Am. Rep., 405; *Lehew* v. *Brummell,* 103 Mo., 546, 15 S. W., 765, 11 L. R. A., 828, 23 Am. St. Rep., 895; *State* v. *Gray,* 93 Ind. 303; *Dawson* v. *Lee,* 83 Ky., 49; *Puitt* v. *Gascon Co. Com'rs,* 94 N. C., 709, 55 Am. Rep., 638; *McMillan* v. *School Com. District,* 107 N. C., 609, 12 S. E., 330, 10 L. R. A., 823; *Cumming* v. *Board of Education,* 175 U. S., 529, 20 Sup. Ct., 197, 44 L. Ed., 262; *United States* v. *Buntin* (C. C.), 10 Fed., 730.

Places of amusement: *Younger* v. *Judah,* 111 Mo., 303, 19 S. W., 1109, 33 Am. St. Rep., 527, 16 L. R. A., 558.

There is clearly no merit in the objections made to the statute under this ground of the motion to quash of the plaintiff in error.

The second ground of the motion assails the statute as arbitrary and vicious class legislation, and violative of section 8 of article 11 of the constitution of Tennessee, in that section 1, by its first proviso, excepts from its operation nurses attending children or other helpless persons of the other race.

This objection is also untenable. The proviso is a mere incident to the real object of the act, severable from it, and it is evident that the law-making power would have enacted the law without it. Therefore, if

this provision is void, it does not vitiate the entire statute. *Lindsay* v. *Allen,* 112 Tenn., 638, 82 S. W., 171.

The classification, however, if the proviso amounts to this, is a natural and reasonable one, well supported by the necessities of life and the instincts of humanity. It applies to both races, and discriminates against no one in like situation.

The precise question was before the supreme court of Florida in the case of *Croom* v. *Schad,* supra, and there decided in accordance with the views we have expressed. That court said: "It is next claimed that section 7 of the ordinance excepting nurses in charge of children or invalids of the other race from the provisions of the ordinance is an unreasonable classification of persons. The main purpose of the ordinance is to separate the races on street cars, but that this section 7, excepting nurses from its provisions, being an unjust and unreasonable classification, defeats the whole purpose of the ordinance by permitting nurses of either race to ride in the compartment or car devoted to the opposite race, when in charge of children or invalids of such opposite race. There is no merit in this contention. The fact that children and invalids require the constant care and attention of their nurses makes it highly reasonable that a law making provisions for the separation of the races should make an exception that would prevent the separation of such children and invalids from their nurses. *Magoun* v. *Ill. Trust & Savings Bank,* 170 U. S., 283, 18 Sup. Ct., 594, 42 L. Ed., 1037; *Dell* v. *Martin,* 41 Fla.,

221, 26 South., 188, 45 L. Ed., 201, 79 Am. St. Rep., 171; *State, ex rel. Lamar,* v. *Jacksonville Terminal Co.* (Fla.), 27 South., 221; *Plessy* v. *Ferguson,* 163 U. S., 537, 16 Sup. Ct., 1138, 41 L. Ed., 256; *Anderson* v. *Louisville & N. R. R. Co.* (C. C.), 62 Fed., 46."

The same exception appears in the statutes providing for the separation of the white and colored races on commercial railroads, sustained in the cases of *Smith* v. *State,* 100 Tenn., 494, 46 S. W., 566, 41 L. R. A., 432; *Plessy* v. *Ferguson,* 163 U. S., 541, 16 Sup. Ct., 1138, 41 L. Ed., 256; and *Chesapeake & Ohio Ry. Co.* v. *Kentucky,* 179 U. S., 388, 21 Sup. Ct., 101, 45 L. Ed., 244, and was passed over unnoticed, or was considered not violative of any constitutional provision.

The next objection is that section 2 of the act authorizing the conductors in charge to change the line of division in cars, and to assign seats to passengers in accordance with such change, is an unlawful delegation of the police power to the agents of the street car company. It is said this provision of the statute violates the constitution of Tennessee, providing the manner in which officers shall be elected. This question is not raised by the facts in the record. There is no evidence that this authority was exercised by the conductor of the car upon which the plaintiff in error desired to take passage or to her prejudice. The provision is also merely an incident to the statute, and, if void, would not affect its validity.

But the contention is obviously unsound. The statute

Morrison v. State.

does not create or fill an office, and in no other way could it be carried into effect. The provision is intended to meet emergencies and contribute to the convenience of the public.

The statute is obligatory upon the company operating the cars as much as it is upon persons patronizing them, and in no other way could it comply with its provisions.

The company had the power by the common law to make reasonable rules and regulations for the conduct of its cars and the public while upon them, and to assign them to particular places, and the statute confers no new powers upon it, but requires it to exercise one already existing in order to carry the new regulation into effect.

This point was made and held against the present contention in *Patterson* v. *Taylor,* supra, where it is said: "It is next contended that said ordinance is vague and uncertain, and delegates to street car companies authority to determine how the races shall be separated upon street cars, thus depriving the city of the right to enforce a uniform operation of the law over the street cars of the city. It has not been pointed out in the briefs or argument here in what particular there is any vagueness or uncertainty in the terms of the questioned ordinance, and we fail to discover anything therein that is open to such a criticism; but, on the contrary, we think that the ordinance in all of its provisions is carefully drawn, clear, and precise. Neither do we think that there is in it an unwarranted delegation of authority or

discretion to the street car companies in the practical execution of the ordinance. The duty is thereby clearly imposed upon such street car companies to effect a separation of the races during carriage on their lines in one or the other of two clearly-defined modes: (1) By providing separate cars for the two races; or (2) by division of the car when the same car is assigned to the two races. The only delegation of discretion to such carriers is as to which of these two modes of separation they shall adopt. The ordinance makes it obligatory upon them to adopt the one or the other."

The last contention of the plaintiff in error, as we understand it, is that section 3, of the statute, by requiring persons of the two races concerned to take seats or places assigned them respectively in the first instance or by direction of the conductor, upon a change of the division being made, and upon refusal to do so to leave the car, deprives them of their property rights and privileges without due process of law, and violates section 8 of article 1, of the constitution of Tennessee, and the fourth, fifth, and fourteenth amendments to the constitution of the United States. This point is a repetition of the first, and is also without merit.

The statute and its enforcement deprives no one of any property right of privilege. No one has a right to any particular seat in a conveyance. When a passenger proposes to take passage in a public conveyance, he does so subject to the laws, ordinances, and reasonable police

Morrison v. State.

regulations made by the authorities of that jurisdiction for the government of both the carrier and the passenger, and those made by the owner of the conveyance for its orderly conduct, and he must conform to such rules and laws. This statute, as we have said, is obligatory upon both the patrons of the cars and the company, and both are required to observe it. If it is valid in other respects, it is the law of this State, and controls the transportation of passengers upon the cars of this company, and the plaintiff in error could not acquire a right to any particular seat, place or part of the car, or any privilege relating to it, by violating this law.

This question was also decided adversely to the plaintiff in error in the case of *Patterson* v. *Taylor,* supra. The case of *Plessy* v. *Ferguson,* already cited, is also in point upon this question.

It is there in substance said that the enforced separation of the races, by legislation enacted by the States for the regulation of their internal affairs, neither prejudices the privileges or immunities of the colored man, deprives him of his property without due process of law, nor denies to him the equal protection of the laws, within the meaning of the fourteenth amendment to the constitution of the United States.

We are unable to see anything new in legislation in this statute, and the assaults made upon it are substantially those which have been adjudged by the courts not to affect the validity of similar laws. It does not, in our

opinion, conflict with any principle or rule of the organic law, and is a reasonable and proper police regulation.

There is no error in the record, and the judgment of the lower court is affirmed, with costs.