NASHVILLE, CHATTANOOGA & ST. LOUIS RY. *et al. v.* MRS. CLYDE MORGAN, *et al.*

(*Jackson*, April Term, 1929.)

Opinion filed April 15, 1929.

BROWN & SPURLOCK and FITZGERALD HALL, for plaintiff in error.

JOE FRASSRAND, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

Plaintiffs in error, The Nashville, Chattanooga & St. Louis Railway and Western and Atlantic Railroad, defendants below, prosecuted an appeal from a judgment in favor of Mrs. Clyde Morgan and Nash Motor Sales Company, plaintiffs below. For convenience, the parties are designated as in the trial court.

This action arose from the collision of defendants' locomotive and plaintiffs' automobile at a highway crossing over the railway track in the State of Georgia. Plaintiffs sued to recover damages to the automobile, declaring defendants' negligence as the proximate cause of the loss in a declaration with counts based on the common law and statute of Georgia. The first, the common-law count, was dismissed by plaintiffs.

The defendants moved to strike from the second count sections 2779 and 2780 of the Code of Georgia, because related alone to procedure controlled by the law of the forum, and the motion was sustained. They then plead the general issue and by special plea presented facts upon which it was averred that the effect of section 2677 of the Code of Georgia was to impose a burden on interstate commerce and that the Act was void and afforded no basis for plaintiffs' cause of action. Plaintiffs' demurrer to the special plea was sustained. The plea was dismissed and a jury trial followed, resulting in verdict and judgment for plaintiffs. No motion for new trial appears in the record, but it contains a statement that such motion was made and overruled. There is, however, nothing from which it may be inferred that defendants challenged the sufficiency of the evidence by the motion for new trial, and no errors are assigned in this court upon the facts. Only the validity of the Georgia statute is challenged. It is insisted that the trial judge erred (1) in sustaining plaintiffs' demurrer to the special plea, which raised the question as to the constitutionality of the statute, and (2) in charging the jury that the accident happened in the State of Georgia, and the section of the Code of Georgia read by plaintiffs in evidence governed the rights and liabilities of the

parties and was a valid law, and if defendants failed to do the things required,· they would be liable.

 Commerce between the States may be affected by local police regulations without the latter becoming invalid on that account; for when the local police regulation has real relationship to the suitable protection of the people of the State and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce. *State* v. *McKay,* 137 Tenn., 299; *Smith* v. *State,* 100 Tenn., 494.

 A State may, when required for the safety of persons or property, make needful regulation for the government of railroads within its jurisdiction. *Crutcher* v. *Kentucky,* 141 U. S., 61; *Powell* v. *Pennsylvania,* 127 U. S., 678. Such regulation is an exercise of the police power, a power inherent in the States, that existed before formation of the Federal Government and which was reserved to be exercised and administered by the States within their respective jurisdictions for the protection of the people and their lives, health and property. *Morrison* v. *State,* 116 Tenn., 534.

The mere fact that trains carry interstate commerce would not exclude the right of the State to exercise the police power through the enactment of regulatory laws designed for the protection of human life or of property. The public safety is a paramount consideration, and police regulations to accomplish that end are not struck down by the courts because the regulations may entail expense upon the railroads in order to meet them. *Erie R. R. Co.* v. *Board of Public Utility Comrs.,* 254 U. S., 394.

 The so-called Georgia Blow Post Law, sections 2675-2677, Georgia Civil Code of 1910, in addition to requir-

ing signals from trains approaching crossings, required reduction of the speed so that the engineer could stop the train upon the appearance of an object upon or near the crossing. Construing the Act, the court, in *Seaboard Airline R. Co.* v. *Blackwell,* 244 U. S., 310, said that compliance with the act made it necessary for trains to slow down practically to a full stop at each crossing, prolonged the schedule, greatly increased operating costs and rendered the act void because this latter provision directly burdened interstate commerce.

Subsequently section 2677 of the 1922 Supplement to the Code of Georgia was enacted. We quote it:

"2677 (a) Each locomotive engine operated on the line of any railway in this State shall be equipped with a signal bell and a steam signal whistle of at least the power of those with which the engines of the several railroads in this State are equipped at the time of the passage of this law.

"2677 (b) Upon the line of each railway in this State, and at a point four hundred yards from the center of its intersection at grade with any public road or street used by the public generally in crossing the tracks of said railway, and on each side of said crossing, there shall be erected by the railroad company, persons or corporations owning and operating said railway, a blow-post to indicate the direction of such crossing, and the engineer operating the locomotive engine of any railroad train moving over the track of said railroad shall be and he is hereby required, when he reaches the said blow-post, as a signal of approach to said crossing, to blow through said whistle two long and two short blasts at intervals of five seconds between each blast; said blasts to be loud and distinct. In addition thereto, after reaching the

blow-post furthest removed from said crossing, and while approaching said crossing, he shall keep and maintain a constant and vigilant lookout along the track ahead of said engine, and shall otherwise exercise due care in approaching said crossing, in order to avoid doing injury to any person or property which may be on such crossing, or upon the line of said railway at any point within fifty feet of such crossing.

"2677 (c) Should any railway company, person or corporation operating a line of railway in this State fail or neglect, except as provided in section 2677 (d), to put up and maintain said post, such company, corporation or person so offending shall be guilty of a misdemeanor.

"2677 (d) If any engineer operating a locomotive engine along the line of said railroad shall neglect to blow said whistle, or neglect to exercise due care, or neglect to keep and maintain a constant and vigilant lookout along the track of said road ahead of his engine, in order to avoid doing injury to persons or property which might be upon such road crossing, or upon the line of said railroad within fifty feet of such crossing, he shall be guilty of a misdemeanor; provided, however, that within the corporate limits of cities, towns and villages of this State the said railroad company shall not be required either to erect the blow post hereinbefore provided for, or to blow the whistle of their locomotives in approaching the crossing or public roads in said corporate limits, but in lieu thereof the engineer of said locomotive shall be required to signal the approach of his train to such crossing in said corporate limits by constantly tolling the bell of said locomotive, and on

failure to do so the penalties of this section shall apply to such offense; provided further, that nothing in this proviso contained shall be held to relieve the said engineer or the said railroad company of his or its duty of keeping and maintaining a constant and vigilant lookout along the track ahead of its engine while moving within the corporate limits of said city, town or village, or excusing such railroad company or such engineer from exercising due care in so controlling the movements of such trains as to avoid doing injury to persons or property which may be on such crossing within said city or within fifty feet of said crossing on the line of such railway, or for failure to observe any ordinance of such city, town, or village, which may lawfully be passed, regulating the speed at which railroad trains may be run therein.

"2677 (e) The enumeration of certain specific duties as in this law expressed shall in nowise be so construed as to relieve any railroad company from any duty or liability which may be imposed upon them by existing laws."

In the enactment of the recent police regulation, intended to prevent or to minimize accidents at public crossings, the Legislature omitted the infirmity that destroyed the other law. This recent act requires the engineer on a locomotive to sound warning signals as a means of notifying persons on or near public crossings of the approaching train; and requires that the engineer keep a constant and vigilant lookout and otherwise exercise due care to avoid injury to person or property at or near such crossings. For the most part, the statute embodies the common-law requirement of ordinary care increasing in proportion to the increasingly dangerous

circumstances. It first provides for the warning signals and then requires that the engineer be in readiness to act upon the sudden appearance of objects on the crossings. There is no requirement that trains shall slow down or stop at crossings. Nothing on the face of the statute, taken altogether, subjects it to the criticism that in meeting its requirements interstate commerce is directly burdened.

It is insisted that compliance with the Act would require that the movement of the train be timed, in accord with the blasts of the whistle. It cannot be supposed that the Legislature intended that absurd consequences should flow from their enactment of the statute, and we think the Act admits of a construction that will avoid such a result. It is also to be presumed that the Legislature intended to enact a valid and constitutional law, and if the Act is open to more than one construction that must be adopted which will reconcile the statute with the constitution and avoid the consequence of unconstitutionality. Black on Interpretation of Laws, pp. 93-104.

There is no requirement, express or implied, that the movement of trains shall be timed to accord with the four blasts of the whistle as assumed in the special plea, therefore the matter presented by the plea becomes immaterial. From the undisputed evidence, the engineer complied with the statute while the train was running at a speed of thirty-five miles an hour, and met the requirements of the statute without reducing the speed of the train. The accident occurred about eleven o'clock at night. D. E. Dean, who was alone in the automobile, and the engineer and fireman on the locomotive were the only witnesses who saw it. Dean's testimony is silent as to whether or not the whistle was blown. He merely states

that he heard the train coming after the automobile stalled on the crossing. Both the engineer and fireman testify that the whistle was sounded at the blow-post, the first blast beyond the post at a distance of thirteen hundred feet from the crossing. Both of these witnesses testify that the two long and two short blasts were made. They say, too, that the other requirements of the statute were met and there is no contradiction of their testimony. The statute, on its face, making a reasonable regulation and not being open to such construction as would impose a direct burden on commerce, we conclude that the trial judge committed no error in sustaining the demurrer to the special plea. Only a question of law was presented.

Notwithstanding the paucity of the facts necessary to make out a case under the statute, there was no complaint in the trial court as to the sufficiency of the evidence and no errors are assigned thereon in this court. It follows that the judgment of the trial court is affirmed.

### On Petition to Rehear.

Questions raised by the petition were carefully considered upon review of the case. It is insisted by the petition that there was nothing about the statute to construe. It was necessary to determine whether the statute required the slowing down of trains at road crossings to such extent as to impose a burden on interstate commerce. It seems to us that giving the statute a reasonable construction, and in view of the rule that it is not to be supposed that the lawmakers intended to enact an invalid law, no burden was imposed upon interstate commerce.

The petition to rehear is denied.

Affirmed by Supreme Court of United States, Jan. 27, 1930, 74 L. Ed., 239.