ANDERSON v. LOUISVILLE & N. R. CO.

(Circuit Court, D. Kentucky. June 4, 1894.)

1. CIVIL RIGHTS — DISCRIMINATION AGAINST NEGROES — SEPARATE RAILROAD CARS.

Act Ky. May 24, 1892, requiring separate cars to be furnished for white and colored passengers on railroads of the state, but prohibiting any discrimination in the quality, convenience, or accommodations in the cars set apart for each, does not contravene the fourteenth amendment of the United States constitution, which secures equality of rights, not the joint and common enjoyment of rights.

2. INTERSTATE COMMERCE—REGULATION BY STATES.

But as the language of the act is so comprehensive as to embrace all passengers, whether their passage commences and ends within the state or otherwise, its provisions dividing them into classes according to color violate the interstate commerce clause of the United States constitution, and render the entire act invalid.

This was an action by Anderson against the Louisville & Nashville Railroad Company for damages for ejection from defendant's trains. Defendant demurred to plaintiff's petition.

John Feland & Son and J. H. Lott, for plaintiff.
Wilbur F. Browder and Reuben A. Miller, for defendant.

BARR, District Judge. The plaintiff, who is a colored man and a citizen and resident of the state of Indiana, sues the defendant, the Louisville & Nashville Railroad Company, a Kentucky corporation, which is operating, as a common carrier, a railway between St. Louis, Mo., and Nashville, Tenn., and several other railways in the state of Kentucky, for an alleged wrongful act in putting him and his wife off of its trains on two separate occasions. He alleges that he and his wife, who desired to go from Evansville, Ind., to Madisonville, Ky., purchased, at Evansville, two full first-class railroad tickets on defendant's road from Evansville to Madisonville, and then entered the defendant's car, at Evansville, usually designated the ladies' car, where they had a right to be, and that this right was recognized by the conductor of the train by taking up their tickets and exchanging them for the usual conductor's check. He alleges that they remained seated in said car undisturbed so long as the train was without the state of Kentucky, but, when the train came into that state, said conductor required of plaintiff and his wife to give up their seats in said car, and go into a compartment in a car immediately in front, which had been set apart for colored persons exclusively. He alleged that he and his wife refused to occupy said compartment, and thereupon said conductor wrongfully refused to carry them further on said train, and put

them off, without right and against their consent. In the second paragraph the plaintiff alleges that on another occasion he and his wife purchased over defendant's railroad two full first-class tickets from Henderson, Ky., to Madisonville, in same state, and that they entered the defendant's train, and seated themselves in the car designated for white persons exclusively, and that afterwards the conductor of the train took up their tickets and exchanged them for the usual conductor's checks, and then required that they should give up their said seats, and go into a compartment of a car which was and had been designated for colored persons exclusively; but that plaintiff and his wife refused to go into said compartment, and thereupon said conductor refused to carry them any further, and wrongfully put them off said train at Robard's Station, which was 30 miles distant from Madisonville, the place of his destination. The defendant has demurred to both of these paragraphs of plaintiff's petition, and thus raises the question of the constitutionality of an act of the Kentucky legislature entitled "An act to regulate the travel or transportation of the white and colored passengers on the railroads of this state," approved May 24, 1892. The 1st, 2d, 3d, 5th, 6th, and 7th, sections of that statute are as follows:

"Section 1. Any railroad company or corporation, person or persons, running or otherwise operating railroad cars, or coaches by steam or otherwise, on any railroad line or track within this state, and all railroad companies, person or persons, doing business in this state, whether upon lines of railroads owned in part or whole, or leased by them; and all railroad companies, person or persons, operating railroad lines that may hereafter be built under existing charters, or charters that may hereafter be granted in this state; and all foreign corporations, companies, person or persons organized under charters granted or that may hereafter be granted by any other state; who may be now, or may hereafter be engaged in running or operating any of the railroads of this state, either in part or in whole, either in their own name or that of others, are hereby required to furnish separate coaches or cars for the travel or transportation of the white and colored passengers on their respective lines of railroads. Each compartment of a coach divided by a good and substantial wooden partition, with a door therein, shall be deemed a separate coach, within the meaning of this act, and each separate coach or compartment shall bear in some conspicuous place, appropriate words in plain letters, indicating the race for which it is set apart.

"Sec. 2. That the railroad companies, person or persons, shall make no difference or discrimination, in the quality, convenience or accommodations in the cars or coaches, or partitions, set apart for white and colored passengers.

"Sec. 3. That any railroad company or companies, that shall fail, refuse, or neglect to comply with the provisions of sections 1 and 2 of this act, shall be deemed guilty of a misdemeanor, and upon indictment and conviction thereof shall be fined not less than five hundred, nor more than fifteen hundred dollars for each offense."

"Sec. 5. The conductors or managers on all railroads shall have power, and are hereby required, to assign to each white or colored passenger his or her respective car or coach or compartment; and should any passenger refuse to occupy the car, coach or compartment to which he or she may be assigned by the conductor or manager said conductor or manager shall have the right to refuse to carry such passenger on his train, and may put such passenger off the train; and for such refusal, and putting off the train, neither the manager, conductor nor railroad company shall be liable for damages in any court.

"Sec. 6. That any conductor or manager on any railroad, who shall fail or refuse to carry out the provisions of section 5 of this act, shall, upon convic-

tion, be fined not less than fifty nor more than one hundred dollars for each offense.

"Sec. 7. The provisions of this act shall not apply to employes of railroads, or persons employed as nurses, or officers in charge of prisoners."

This statute makes no discrimination in favor of white passengers, since any discrimination in the quality, convenience, or accommodations in the cars and compartments set apart for white and colored passengers is prohibited. It may be that some of the railroad companies of this state fail to provide equal accommodations for its colored passengers as they provide for white passengers, but this difference is not authorized by this statute, but prohibited. The fourteenth amendment to the constitution of the United States prohibits discrimination by a state because of race or previous condition of servitude, and, indeed, secures to all of its citizens certain fundamental rights as against state action, but it does not secure the joint and common enjoyment of such rights. It is the equality of right which is secured, and not the joint and common enjoyment of such right. Civil Rights Cases, 109 U. S. 3, 3 Sup. Ct. 18; U. S. v. Buntin, 10 Fed. 730; Claybrook v. Owensboro, 16 Fed. 297.

The next inquiry is whether this statute is in violation of the commerce clause of the constitution of the United States, which gives congress the exclusive right to "regulate commerce with foreign nations, and among the several states." Const. art. 1, § 8. If this statute be construed to include the internal commerce of the state of Kentucky, and not to apply to interstate commerce, it is a proper exercise of the police power of the state, and is constitutional, as has been settled in the case of Louisville, etc., R. Co. v. Mississippi, 133 U. S. 587, 10 Sup. Ct. 348. See, also, Railroad Commission Cases, 116 U. S. 307, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191. The case of Louisville, etc., R. Co. v. Mississippi came to the supreme court upon the question whether or not the railroad company was obliged, under the requirements of the statute of the state of Mississippi, to furnish separate cars or compartments for colored passengers whose passage commenced and ended in the state, and a majority of the court did not attempt to decide whether the statute would have been constitutional if it had applied to interstate commerce. There was, however, a dissent by Justices Harlan and Bradley, because they considered that statute as an attempt to regulate interstate commerce. The Kentucky statute has never been construed by the court of appeals of the state, and we must determine whether it includes interstate commerce as well as internal commerce. The title of the act is to regulate the travel or transportation of white and colored passengers on the railroads of this state, and in terms it applies to all companies, corporations, or persons operating railroads, by steam or otherwise, within the state, and to all conductors of trains thus operated; and it requires all such conductors, under penalty of a fine, to assign to each white and colored passenger his or her respective car or compartment. This language is so broad and comprehensive that we conclude it must embrace all passengers, whether their

passage commences and ends in the state of Kentucky, or commences in a foreign country or another state of this Union, and ends elsewhere than in this state. The act seems to divide all persons traveling on railroads in this state, without regard to the place whence they came or whither they go, into classes, and that on the color line; all white passengers being in one class, and all other passengers in another. If this be the correct construction of the act, the question as to the constitutionality of the entire act arises, as the court cannot separate one part of the act from another, and leave the constitutional part valid, and enforceable. Where the provisions of an act are distinct and separate, and the court can determine by construction the constitutional parts of an act from the unconstitutional parts, and can presume the legislature would have enacted the constitutional part of the act without the unconstitutional part, it may declare a part of an act unconstitutional and the other enforceable; but this cannot be done with this act. Baldwin v. Franks, 120 U. S. 678, 7 Sup. Ct. 656, 763, and cases cited.

The transportation of passengers is commerce, and the regulation of commerce "with foreign nations and among the several states" is exclusively in congress; yet there are many state laws that incidentally affect foreign and interstate commerce which have been held constitutional. The supreme court has declined to attempt to lay down a definite rule by which may be determined what is a regulation of foreign and interstate commerce, and how far the several states may legislate upon the subject. It is often most difficult to determine the line of demarkation which separates the power of congress from that of state legislatures, but we think the principle which determines the case under consideration has been decided by the supreme court in Hall v. De Cuir, 95 U. S. 485. In that case the Louisiana statute, as the state court construed it, forbade common carriers of passengers to separate the passengers carried by them on account of race or color while in their charge in that state, and authorized a recovery of exemplary as well as actual damages by any passenger who was thus separated without his or her consent. The supreme court held the act unconstitutional as affecting foreign and interstate commerce, although De Cuir, who was a woman of color, took passage upon the steamer Governor Allen at New Orleans to Hermitage, which was a landing within the state of Louisiana. She was refused accommodations, on account of her color, in a cabin of the boat specially set apart for white persons, and brought suit therefor, and recovered damages in the state court. Chief Justice Waite said:

"If each state was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each state could provide for its own passengers, and regulate the transportation of its own freight, regardless of the interests of others. Nay, more, it could prescribe rules by which the carrier must be governed within the state in respect to passengers and property brought from without. On one side of the river or its tributaries he might be required to observe one set of rules, and on the other another. Commerce

cannot flourish in the midst of such embarrassments. No carrier of passengers can conduct his business with satisfaction to himself, or comfort to those employing him, if on one side of a state line his passengers, both white and colored, must be permitted to occupy the same cabin, and on the other be kept separate. Uniformity in the regulations by which he is to be governed from one end to the other of his route is a necessity in his business, and, to secure it, congress, which is untrammeled by state lines, has been invested with the exclusive legislative power of determining what such regulations shall be. If this statute can be enforced against those engaged in interstate commerce, it may be as well against those engaged in foreign; and the master of a ship clearing from New Orleans for Liverpool, having passengers on board, would be compelled to carry all, white and colored, in the same cabin during his passage down the river, or be subject to an action for damages, 'exemplary as well as actual,' by any one who felt himself aggrieved because he had been excluded on account of his color."

Neither this language nor decision has been modified or changed by the court in Louisville, etc., R. Co. v. Mississippi, 133 U. S. 587, 10 Sup. Ct. 348. The court in that case, after quoting a part of the opinion in Hall v. De Cuir, said:

"So the decision was by its terms carefully limited to those cases in which the law practically interfered with interstate commerce. Obviously, whether interstate passengers of one race should, in any portion of their journey, be compelled to share their cabin accommodations with passengers' of another race, was a question of interstate commerce, and to be determined by congress alone. In this case the supreme court of Mississippi held that the statute applied solely to commerce within the state; and that construction, being the construction of the statute of the state by its highest court, must be accepted as conclusive here. If it be a matter respecting wholly commerce within a state, then, obviously, there is no violation of the commerce clause of the federal constitution. Counsel for plaintiff in error strenuously insists that it does affect and regulate interstate commerce, but this construction cannot be maintained."

It cannot be doubted that under this latter decision the state of Kentucky could constitutionally pass a law which would require separate cars or compartments for white and colored passengers when their travel commences and ends in the state. See, also, Wabash, etc., Ry. Co. v. Illinois, 7 Sup. Ct. 4; Louisville, etc., Ry. Co. v. State, 66 Miss. 662, 6 South. 203; State v. Judge, 44 La. Ann. 770, 11 South. 74; Ex parte Plessy, 45 La. Ann. 80, 11 South. 948. The trend of recent cases in the supreme court has been to fully sustain the doctrine of the exclusiveness of the power of congress over interstate and foreign commerce. Thus in the case of Wabash, etc., Ry. Co. v. Illinois, 118 U. S. 557, 7 Sup. Ct. 4, the court held unconstitutional a statute of Illinois which enacted that if any railroad corporation shall charge, collect, or receive for the transportation of any passenger or freight of any description upon its railroad, for any distance within the state, the same or a greater amount of toll or compensation than is at the same time charged, collected, or received for the transportation in the same direction of any passenger or like quantity of freight of the same class over a greater distance of the same road, all such discriminating rates, charges, collections, or receipts, whether made directly or by means of rebate, drawback, or other shift or evasion, shall be deemed and taken against any such railroad corporation as prima facie evidence of unjust discrimination, which was pro-

hibited under penalty by the act. In Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. 592, the court held an act of Tennessee unconstitutional that required that drummers and all persons not having a regular licensed house of business in the taxing district of Shelby county, offering for sale or selling goods, wares, or merchandise therein by sample, shall pay to the county trustee the sum of $10 per week, or $25 per month, for such privilege. This was because it applied to persons soliciting the sale of goods on behalf of individuals and firms doing business in another state, and so far was a regulation of commerce among the states. In the case of Minnesota v. Barber, 136 U. S. 313, 10 Sup. Ct. 862, the court held a statute of Minnesota which required, as a condition of sales in that state of fresh beef, veal, mutton, lamb, or pork, for human food, that the animals from which such meats are taken shall have been inspected in that state before being slaughtered, unconstitutional and void as an interference with interstate commerce. And again, in the case of Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, the court held an act of the Kentucky legislature which provided that the agent of an express company not incorporated by that state should not carry on business in the state without first obtaining a license from the state, and that he could not obtain such license until he satisfied the auditor of the state that the company he represented had an actual capital of at least $150,000, was unconstitutional and void. The court said in that case:

"But the main argument in support of the decision of the court of appeals is that the act in question is essentially a regulation made in the fair exercise of the police power of the state. But it does not follow that everything which the legislature of a state may deem essential for good order of society and the well-being of its citizens can be set up against the exclusive power of congress to regulate the operations of foreign and interstate commerce. We have lately expressly decided in the case of Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, that a state law prohibiting the sale of intoxicating liquors is void when it comes in conflict with the express or implied regulation of interstate commerce, by congress declaring the traffic in such liquors as articles of merchandise between the states shall be free."

These and other cases show that the supreme court has had occasion and has given the subject of this exclusive power of congress to regulate foreign and interstate commerce much consideration, and has insisted upon the exclusiveness of this power even as against the exercise of the police power by the several states of this Union. Whether or not a regulation of the defendant company that there should be separate cars or compartments for white and colored passengers, and the passengers be thus separated, is proper and reasonable, cannot arise on this demurrer, as there is nothing in the record showing any regulation or rule by the company. The question of the reasonableness of such a regulation of the company can only arise when the regulation is shown to have been made by the company. Railroad Co. v. Williams, 55 Ill. 185. The defendant's demurrer to the petition must be overruled, and it is so ordered.