# Howard v. The State.

### Violating Prohibition Law.

(Decided September 7, 1916. Rehearing denied October 19, 1916. 73 South. 559.)

1. **Intoxicating Liquors; Constitutional Provision.**—As set out in Acts 1915, p. 39, the Bonner Anti Shipping Law is constitutional.

2. **Indictment and Information; Sufficiency.**—A complaint charging that within 12 months before the making of this affidavit, defendant sold, offered for sale, or kept for sale, or otherwise disposed of spirituous, vinous or malt liquors, etc., was sufficient as it substantially followed the language of the statute.

3. **Same.**—A complaint charging that within 12 months before making the affidavit, and since a named date, the defendant received or accepted for delivery, or possessed at one time more than one-half gallon of spirituous liquor, substantially followed the language of § 12, Acts 1915, p. 39, and was sufficient.

4. **Intoxicating Liquors; Prima Facie Evidence.**—The presumption imposed by the possession of more than a half gallon of spirituous liquors at one time is not entirely overcome by countervailing evidence, but must be accorded such weight as to produce conflict in the evidence sufficient to carry the case to the jury.

5. **Charge of Court; Invading Province of the Jury.**—Charges which are invasive of the province of the jury may be refused without error.

6. **Commerce; Interstate; Intoxicating Liquors.**—The possession of two quarts of whisky by a passenger on an interstate train, carried for his private use, and not in excss of what is reasonably necessary for his personal use and comfort while on the journey, is protected by the commerce clause of the Constitution as to possession of personal baggage.

7. **Intoxicating Liquors; Unlawful Possssion.**—Where more than two quarts of liquor were found in defendant's suitcase on a train, and his defense was that such excess belonged to others who had placed it in his suitcase without his knowledge, it was proper to submit to the jury the question of defendant's knowledge of the presence in his suitcase of such whisky, for if he knowingly carried it for others, his possession would be unlawful.

APPEAL from Walker Law and Equity Court.

Heard before Hon. J. J. CURTIS.

Tom Howard was convicted of violating the prohibition law, and he appeals. Affirmed.

Omitting formal charging part, the affidavit is as follows:

That within twelve months before the making of this affidavit Tom Howard sold, offered for sale, or kept for sale, or otherwise disposed of, spirituous, vinous, or malt liquors, contrary to law.

(4) Within twelve months before making this affidavit and since January 27, 1915, Tom Howard received or accepted for delivery of or possessed at one time more than one-half gallon of spirituous liquor.

Charge 1 given for the state is as follows:

If you believe beyond a reasonable doubt that defendant knowingly had in his possession more than two quarts of whisky in this county before the affidavit was sworn out, and since January 27, 1915, you should find defendant guilty under the fourth count.

LACY & LACY, for appellant. W. L. MARTIN, Attorney General, and P. W. TURNER, Assistant Attorney General, for the State.

BROWN, J.— (1) The constitutionality of section 12 of the act commonly designated "the Bonner Anti-Shipping Bill" (Acts 1915, pp. 39-49) was sustained by the Supreme Court in *Southern Express Co. v. Whittle,* 194 Ala. 406, 69 South. 652, and the appellant's contention that the act is unconstitutional cannot prevail.

(2, 3) The state, after all the evidence was introduced, elected to prosecute under the first and fourth counts of the complaint, and the trial resulted in a conviction under the fourth count only. The first count, as has been repeatedly ruled, is in the form prescribed by the statute and was not subject to the demurrers.— *Arrington v. State,* 13 Ala. App. 359, 69 South. 385, affirmed by the Supreme Court in *Ex parte Arrington,* 195 Ala. 694, 70 South. 1012; *Bush v. State,* 12 Ala. App. 260, 67 South. 847; *Harrison v. State,* 13 Ala. App. 354, 69 South. 383; *Whaley v. State,* 13 Ala. App. 356, 69 South. 384. The fourth count follows the language of section 12 of the Bonner Anti-Shipping Law, supra, and was likewise sufficient.—*Kirk v. State,* 14 Ala. App. 44, 70 South. 990; authorities supra.

It may be conceded that a passenger with bona fide transportation from one point in this state to a point in another state is an interstate passenger and within the commerce clause of the

federal Constitution giving to Congress exclusive power to regu-
late commerce between the several states and territories (*Wa-
bash, St. Louis & Pacific Ry. Co. v. Illinois*, 118 U. S. 557, 7 Sup.
Ct. 4, 30 L. Ed. 244), and still, under the evidence in this record,
the issues were properly submitted to the jury.

The sheriff, who was examined as a witness in behalf of the
state, testified that he found the defendant with a suit case full
of whisky and two quarts wrapped in paper bags on the train
between America Junction and Parrish in Walker county on the
22d day of May, 1915; that, besides the two quarts wrapped in
paper, there were nine pints of whisky in the suit case; that,
when he discovered the suit case and started to pick it up, the
defendant said, "That is mine;" that the suit case and the whisky,
wrapped in paper when seized, were on the opposite side of the
aisle of the car from where the defendant was seated; that some
of the whisky had been taken out of one of the quart bottles;
that the defendant was arrested, and when the train reached Par-
rish he gave bond for his appearance and was released from cus-
tody and requested the sheriff to deliver the suit case and whisky
to him. which request was refused.

The defendant offered evidence tending to show that the suit
case and two quarts of the whisky belong to him; that the other
whisky belonged to some other men who were on the train, but
that defendant did not know that it was in his suit case until the
sheriff seized and opened it; that the other men were on the
train, but in a different car from where defendant and the whisky
were located when discovered by the sheriff.   The evidence on
the part of the defendant further tended to show that the defend-
ant and two of the other men who defendant claimed had whisky
in his suit case lived in Mississippi; that they were working on a
bridge crew for the Southern Railway; that they had been work-
ing at Parrish in Walker county on the day before the arrest,
and the foreman and crew had suspended the work and gone to
Birmingham to get their pay, and while there defendant bought
two quarts of whisky from a saloon (this transaction taking place
before saloons were closed in Birmingham) ; that two of the
other men then borrowed his suit case and put it on the train,
and he did not know that they put whisky in it; that defendant
put his whisky in the suit case before the other men borrowed
it from him; that another man, without asking his permission
and unbeknown to him, put three pints of the whisky in. the

suit case; and the defendant testified that the first he saw of
his suit case after they left Birmingham was when he walked
through the car and put a suit case off at Cordova for "a lady."
The defendant testified that at the time he was arrested he was
on his way to Mississippi; that he did not buy a ticket at Bir-
mingham for any point in Mississippi, and had no such ticket;
but that he had transportation furnished by the company which
was good for any place along that line; and that this transporta-
tion had been taken up by the conductor.

The state's testimony in rebuttal tended to show that when
defendant was arrested he was told by the sheriff that he had
more whisky in his possession than the law allowed; that he did
not deny that it was his, but claimed that, as he was carrying it
to Mississippi, the sheriff had no right to disturb him.

(4) The statute in force at the time of the defendant's arrest
made it unlawful for any person, firm, or corporation to receive
or accept for delivery, or to possess or have in possession at any
time, whether in one or more places, more than one-half gallon
of spirituous liquors, and section 13 of the act provides: "That
any of the following facts shall constitute prima facie evidence
that the liquors mentioned in the subdivisions of this section, re-
spectively, are kept, or had in possession for sale, contrary to
law, or for other unlawful disposition thereof:  *  *  *  (1) The
possession of more than one-half gallon of spirituous liquors at
any one time, whether in one or more places," etc.

The passage of such statutes has been sustained as a legiti-
mate exercise of legislative power, and without constitutional
objection.—*Ex parte Woodward*, 181 Ala. 106, 61 South. 295;
*Southern Express Co. v. Whittle, supra,* 69 South. 652; *Fitz-
patrick v. State,* 169 Ala. 1, 53 South. 1021; Underhill, Criminal
Evidence, § 24a.  Under this statute, when the state offered proof
showing that the defendant had in his possession more than one
half gallon of spirituous liquors, the state made out a prima facie
case, and the presumption of law arises that the liquors are
kept for an unlawful purpose.—*Wynn v. State,* 11 Ala. App. 182,
65 South. 687.  This presumption of law, unlike a presumption
of fact, is not entirely overcome by countervailing testimony, no
matter how strong, but must be accorded such weight as pro-
duces conflict in the evidence and will carry the case to the jury.
—*Wynn v. State, supra; Patterson v. Milligan,* 12 Ala. App. 338,
66 South. 914; *Roman, Trustee, v. Lentz, et al.,* 177 Ala. 71,

58 South. 438. Aside from this rule, which required the submission of the cause to the jury, under the evidence in this case the question as to whether the defendant had knowledge that all this liquor was in his suit case, and was a bona fide interstate passenger carrying the suit case as baggage, or was carrying it for unlawful disposition in this state, was a question of fact for the jury. In *Adams Express Co. v. Kentucky,* 206 U. S. 138, 27 Sup. Ct. 608, 51 L. Ed. 992, it was said: "It is, of course, a question of fact whether a carrier is confining itself strictly to its business as a carrier or participating in illegal sales."

The character of the defendant's transportation was not shown, further than that it was furnished by the company and was good for any destination on that line of railway; and, besides, the defendant himself put one suit case off "for a lady" at Cordova. Whether it was of the same character as that seized by the sheriff was not shown, neither is it made to appear that the lady accompanied the other suit case.

"When the commerce clause of the federal Constitution is invoked as a protection to traffic in intoxicating liquors, the courts are not precluded from inquiry into methods and practices to determine whether the transactions involved constituted legitimate interstate commerce or are colorable merely and intended to evade and defeat the full operation of the criminal laws of the state."—*State v. Kirmeyer,* 88 Kan. 589, 128 Pac. 1114; *Adams Express Co. v. Kentucky, supra; Cook v. Marshall County,* 196 U. S. 261, 25 Sup. Ct. 233, 49 L. Ed. 471; *Austin v. Tenn.,* 179 U. S. 343, 21 Sup. Ct. 132, 45 L. Ed. 224.

(5) The question as to whether the defendant had possession of all the whisky, and for what purpose, was for the jury, and charges A, B, C, D, F were well refused as invasive of the province of the jury.

Section 19 of the Bonner Law provides that: "This act shall be construed in harmony with all statutes of the United States relating to the transportation of the liquors mentioned in section 1 of this act into this state from points or places outside of the state, * * * and other federal statutes bearing upon interstate shipments of such liquors."

It is therefore clear that it is not the legislative intent, as gathered from the act as a whole, that it should be construed to apply to the subjects of commerce between the states and territories and from which Congress has not expressly withdrawn

the protection of the commerce clause. We are not unmindful of the long series of adjudged cases by the United States Supreme Court that the states, notwithstanding the commerce clause of the federal Constitution, possess power to adopt reasonable measures to promote and protect the health, safety, morals, and welfare of their people, even though interstate commerce be incidentally or indirectly affected. But when such measures pass beyond the bounds of suitable local protection, or are unreasonable, they become offensive to the federal Constitution.—*Sioux Remedy Co. v. Cope,* 235 U. S. 201, 35 Sup. Ct. 57, 59 L. Ed. 193; *Citizens' National Bank v. Bucheit,* 14 Ala. App. 511, 71 South. 82. See *Ex parte Buckheit,* 196 Ala. 700.

If the defendant was a bona fide interstate passenger with his destination in another state and carrying the liquors in question as a part of his personal baggage and for a lawful purpose, the passenger and his baggage were, within the meaning of section 8 of article 1 of the Constitution of the United States, subjects of commerce between the states and territories, and in the absence of an express withdrawal by Congress of the protection of the Constitution, the statutes of the state were not applicable thereto.—*Wabash, etc., Ry. Co. v. Illinois, supra; Bowman v. Chicago & Northwestern Ry. Co.,* 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700; *Anderson v. Louisville & N. R. R. Co.* (C. C.) 62 Fed. 46. The Supreme Court of the United States, in condemning a statute of the state of Illinois prohibiting carriers from charging the same or a greater rate of tolls for carrying passengers or freight of the same class for any distance than it does for a longer distance, said:

"The line which separates the powers of the states from this exclusive power of Congress is not always distinctly marked, and oftentimes it is not easy to determine on which side a particular case belongs. Judges not unfrequently differ in their reasons for a decision in which they concur. Under such circumstances, it would be a useless task to undertake to fix an arbitrary rule by which the line must, in all cases, be located. It is far better to leave a matter of such delicacy to be settled in each case upon a view of the particular rights involved. But we think it may safely be said that state legislation, which seeks to impose a direct burden upon interstate commerce, or to interfere directly with its freedom, does encroach upon the exclusive power of Congress. The statute now under consideration, in our opin-

ion, occupies that position. It does not act upon the business through the local instruments to be employed after coming within the state, but directly upon the business as it comes into the state from without, or goes out from within. While it purports only to control the carrier when engaged within the state, it must necessarily influence his conduct to some extent in the management of his business throughout his entire voyage. * * * It was to meet just such a case that the commercial clause in the Constitution was adopted. The River Mississippi passes through or along the borders of ten different states, and its tributaries reach many more. The commerce upon these waters is immense, and its regulation clearly a matter of national concern. If each state was at liberty to regulate the conduct of carriers while within its jurisdiction, the confusion likely to follow could not but be productive of great inconvenience and unnecessary hardship. Each state could provide for its own passengers and regulate the transportation of its own freight, regardless of the interests of others. Nay, more, it could prescribe rules by which the carrier must be governed within the state in respect to passengers and property brought from without. On one side of the river or its tributaries he might be required to observe one set of rules, and on the other, another. Commerce cannot flourish in the midst of such embarrassments."—*Wabash, etc., Ry. Co. v. Illinois, supra.*

If the state courts of last resort should hold that the Bonner Anti-Shipping Law is applicable to the subjects and commodities of interstate commerce from which Congress has not withdrawn the protection of the commerce clause of the federal Constitution, its constitutional integrity would be destroyed.—*Wabash, etc., Ry. Co. v. Illinois, supra; Sioux Remedy Co. v. Cope, supra.*

Charge 1, given at the instance of the state, ignores the issue and the tendencies of the evidence in support thereof as to whether the defendant was a bona fide interstate passenger and was carrying the liquors seized by the sheriff to his destination in the state of Mississippi for a lawful purpose. Although he was an interstate passenger with his destination at some point in another state and this liquor was being carried by him to that state for the purpose of violating the laws of that state, the Webb-Kenyon Act withdraws it from protection as a subject of interstate commerce, and its possession by the defendant would be subject to the police regulations and laws of this state.—*South-*

*ern Express Co. v. Whittle, supra.* On the other hand, if the defendant was not a bona fide interstate passenger, but his assumed relation was merely colorable, and assumed as a cloak to protect him in the unlawful traffic of liquors, he would be subject to the police regulations and laws of the state and subject to punishment thereunder.

For the error in giving charge 1, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ON REHEARING.

(6) The appellant's contention on the trial was that only two quarts of the liquor belonged to him, and that the other liquors found in his suit case belonged to others and were put in his suit case without his knowledge or consent, and appellant's evidence tended to sustain this theory. The contention of the state was that all the liquors were carried by the defendant and were in his possession when he was arrested, and evidence was offered to sustain this theory. If only two quarts of whisky belonged to the defendant and this was all he had in his possession, its possession was not unlawful; and, if he was carrying it for his own private use and it was not in excess of what was reasonably necessary for his personal use and comfort while on the journey, it would be protected as personal baggage and under the protection of the commerce clause of the Constitution.—*Connolly v. Warner,* 106 Mass. 146, 8 Am. Rep. 300; 5 R. C. L. 161, §§ 786-788.

(7) If, however, the other liquor did not belong to him, but was the property of others, and defendant was carrying it, not for his own use, but for others, it was not personal baggage and was not entitled to protection as such and its possession would be illegal.—5 R. C. L. 163, § 788.

An analysis of the evidence in the case shows that the only contested issue was whether the appellant knowingly had in his possession more than two quarts of spirituous liquors, and, when charge 1 given at the instance of the state is applied to the issues as defined by the evidence, it asserts a correct proposition of law and was properly given.

The result is that the application must be granted, the former judgment of reversal set aside, and an affirmance ordered.

Application granted.