(74 South. 862)

## MORAGNE v. STATE. (6 Div. 95.)

(Court of Appeals of Alabama. March 23, 1917. Rehearing Denied April 10, 1917.)

1. CRIMINAL LAW ⬅286—SPECIAL PLEA—DEFENSES AVAILABLE UNDER GENERAL PLEA.

Special pleas that defendant was engaged in interstate commerce, and therefore not amenable to the state statutes, state a defense available under the plea of not guilty, and it was not error to strike them.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 657, 658, 662, 664, 665.]

2. COMMERCE ⬅61(1)—REGULATION—TRANSPORTATION OVER HIGHWAYS—POLICE POWER.

The Legislature can prohibit the use of public streets or public roads for the transportation of intoxicating liquors or other commodities dangerous to the public, or the use of which violates the state's public policy, unless such regulation unduly burdens interstate commerce, since the use of public streets and public roads within the state is subject to the police power.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81, 89.]

3. COMMERCE ⬅61(1) — INTERSTATE COMMERCE—INTOXICATING LIQUORS—TRANSPORTATION.

Acts 1915, p. 39, § 1, prohibiting the transportation into the state of intoxicating liquors intended to be received, possessed, sold, or used in violation of law, page 44, § 12, making it unlawful to possess intoxicating liquor in excess of certain quantities, and page 27, § 24, making it unlawful to transport such prohibited liquors for another along any public street or highway, are not invalid when applied to interstate transportation of intoxicating liquors over the highways of the state, in view of the Webb-Kenyon Act, prohibiting the interstate transportation of intoxicating liquors into a state for use in violation of the state laws.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81, 89.]

4. CRIMINAL LAW ⬅720(1), 726—TRIAL—ARGUMENT OF COUNSEL.

The solicitor has a right to comment on defendant's testimony that the one for whom it was transporting the liquor agreed to take care of him, and to answer statements made by defendant's counsel.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1670, 1671, 1681.]

5. INDICTMENT AND INFORMATION ⬅130—JOINDER OF OFFENSES — CHARGES UNDER SEPARATE STATUTES.

Under Acts 1909, p. 91, § 30, providing that indictments may set out several charges in separate counts, and that accused may be convicted and punished upon each count as upon separate indictments, and Acts 1915, p. 31, § 30, providing that indictments for violating that statute, or any other statute for the suppression of intemperance, may set out several charges in separate counts, and the accused may be convicted and punished upon each one as upon separate indictments, one accused of unlawfully transporting intoxicating liquor may be tried and convicted on a complaint containing different counts framed under different statutes.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 419–423.]

Appeal from Criminal Court, Jefferson County; H. P. Heflin, Judge.

Frank Moragne, alias Frank Moriner, was convicted of unlawfully transporting intoxi-

cating liquors over the public highways of the state, and he appeals. Affirmed.

John W. Altman, of Birmingham, for appellant. W. L. Martin, Atty. Gen., and Harwell G. Davis, Asst. Atty. Gen., for the State.

BROWN, P. J. The facts material to a disposition of the question presented on this appeal are without dispute, and when treated in the light most favorable to the defendant are as follows: By arrangement made with one Morris, of Pensacola, Fla., in Birmingham, Ala., in November or December, 1915, the appellant agreed and undertook to transport spirituous, vinous, or malt liquors for said Morris from the state of Georgia, through Alabama, to Pensacola, in the state of Florida, in an automobile over the public highways of this state; and in pursuance of this undertaking the defendant received for this purpose from the agent of the Southern Railroad at Cave Springs, Ga., a shipment of liquors consisting of about 74 gallons of whisky, which had been shipped from Chattanooga, Tenn., consigned to Morris; that these liquors were loaded into his automobile and carried by him over the public roads to a point one mile past Clay, in Jefferson county, Ala., where the defendant was arrested by a deputy sheriff of Jefferson county, Ala., and at the time of his arrest defendant had said liquor in his possession for the purpose of carrying it through the state, over the state's public highways, to the state of Florida, and claimed to have a through bill of lading for said liquor. It was also shown that Morris had ordered the liquor in due course of business from a wholesale dealer in Chattanooga, Tenn.; that the shipment was made up and in the regular and ordinary way started on its way over the Southern Railway, billed to Cave Springs, Ga., and from there via automobile to Pensacola, Fla. The defendant testified:

"I think the bill of lading I had from the railroad agent up there shows that the weight of the goods I was carrying was something like 960 pounds, not over 1,000 pounds."

At the time of the agreement between the defendant and Morris, as well as the transaction in hand, there was in force in this state the following statute:

"Section 1. That it shall be unlawful for any railroad company, express company, or other common carrier, or any officer, agent or employé or any of them, or any other person to ship or to transport into, or to deliver in this state in any manner, or by any means whatsoever, any spirituous, vinous, malted, fermented or other intoxicating liquors of any kind from any other state, territory or district of the United States, or place noncontiguous to, but subject to the jurisdiction of the United States, or from any foreign country, to any person, firm or corporation within the territory of this state, when the said spirituous, vinous, malted, fermented or other intoxicating liquors, or any of them, are intended by any person interested therein to be receiv-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ed, *possessed*, sold, or in any manner used, either in the original package, or otherwise, in violation of any law of this state now in force, or in violation of any law that may be hereafter enacted in this state, or take effect therein."

"Sec. 12. That it shall be unlawful for any person, firm or corporation (1) to receive or accept for delivery of, *or to possess or to have in possession at any one time whether in one or more places, and whether in original packages or otherwise, more than one-half gallon of spirituous liquors*, or more than two gallons of vinous liquors, or more than five gallons of malted liquors, when in kegs, or more than sixty pints in bottles, or more than one gallon of any other intoxicating or fermented liquors beyond those thus enumerated; or (2) to receive, accept delivery of, *possess, or have in possession more than one gallon of spirituous liquors*, or four gallons of vinous liquors, or more than ten gallons of malted liquor, including beer and ale, when in kegs, or one hundred and twenty pints in bottles, or more than two gallons of any other fermented or intoxicating liquors beyond those thus enumerated, within any four consecutive weeks, whether in one or more places, but this section shall not apply to the possession of wine or cordial made from grapes or other fruit grown and raised by the person making the same for his own domestic use, when such person keeps such wine or cordial for his own domestic use on his own premises; but this section shall apply upon its enactment into law to such receipt, or acceptance of deliveries, or possession of such liquors respectively, occurring at any place or locality or within any territory in this state, where and within which it shall then be unlawful to sell, keep for sale, or otherwise dispose of said liquors, and it shall become applicable in respect to such receipt or acceptance of deliveries or possession of such liquors occurring at other places or localities, and within other territory in this state when and as soon as it shall become unlawful to sell, keep for sale, or otherwise dispose of such liquors at such places or localities or within such territory; this section shall not affect or modify any existing law or any law enacted at this session of the Legislature in so far as it regulates the sale or keeping for sale of alcohol, or wine for a defined purpose, by wholesale or retail druggists."

Acts 1915, pp. 39 and 44, §§ 1 and 12.

"Sec. 24. It shall be unlawful for any person, firm, corporation or association, whether a common carrier or not, to accept from another for shipment, transportation or delivery, or to ship, transport or deliver for another said prohibited liquors or beverages or any of them, when received at one point, place or locality in this state, to be shipped or transported to or delivered to another person, firm or corporation at another point, place or locality in this state, or *to convey or transport over or along any public street or highway any of such prohibited liquors for another*, and any person violating any provision of this section shall be guilty of a misdemeanor, but the provisions of this section shall not apply to those transporting and delivering to druggists and physicians such alcohol as they are permitted by the laws of the state to sell or dispose of in accordance with the statutory regulations upon that subject."

Acts 1915, p. 27, § 24.

[1] The appellant's only contention is that he was engaged in transporting the liquor in his possession at the time of his arrest as an act of interstate commerce, and therefore he is not amenable to these statutes. This is, in short, a denial that he has violated these statutes, and the defense, if available at all, may be offered under the plea of not guilty;

and the special pleas offered were stricken without error.

The above-quoted statutes prohibiting the possession of more than a specified quantity of liquor, or the transportation of such liquor for another, have been sustained by the repeated rulings of the Supreme Court, as well as by our own rulings, as a legitimate exercise of the police power of the state. O'Rear v. State, 15 Ala. App. 17, 72 South. 505; Howard v. State, 15 Ala. App. 411, 73 South. 559; Southern Express Co. v. Whittle, 194 Ala. 406, 69 South. 652, L. R. A. 1916C, 278.

[2] The use of the public streets and public roads within the state is subject to the police power of the state. Wiggins v. Skeggs, 171 Ala. 492, 54 South. 756; Perry v. N. O., etc., R. R. Co., 55 Ala. 414, 28 Am. Rep. 740; Southern Ry. Co. v. Ables, 153 Ala. 523, 45 South. 234. And it cannot be doubted that it is within the competency of the Legislature to prohibit the use of public streets or public roads in the state for the transportation of commodities that are dangerous to the public, or the possession and use of which violates the state's public policy, unless such regulation unduly burdens or interferes with interstate commerce.

[3] Under the statute quoted above it is a misdemeanor for any person to have in his possession at any one time more than one-half gallon of spirituous liquors. It is likewise a misdemeanor for any common carrier or other person—

"to ship or to transport into * * * this state, in any manner or by any means whatsoever, any spirituous, vinous, malted, fermented or other intoxicating liquors of any kind from *any other state*, * * * when the said spirituous, vinous, malted * * * liquors or any of them, are intended by any person interested therein to be received, *possessed*, sold, or *in any manner used*, either in the original package, or otherwise, in violation of any law of this state." Acts 1915, p. 39, § 1.

And likewise a misdemeanor (page 27, § 24) for any person "to convey or transport over or along any public street or highway any of such prohibited liquors for another," whether the act of transporting commenced in this state or out of it, or whether the transportation was intended to end in this state or in another state.

The crucial point, therefore, is: Can the defendant justify on the theory that he was engaged in interstate commerce and therefore not amenable to these statutes; and, if so amenable, are they void, as being a burden on interstate commerce? This question is given a negative answer by what is known as the Webb-Kenyon Law (Act March 1, 1913, c. 90, 37 Stat. 699), and the construction and operation given it by the Supreme Court of the United States in the very recent case of James Clark Distilling Co. v. Western Maryland Ry. Co., 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326. The title and text of the act are as follows:

"An act divesting intoxicating liquors of their interstate character in certain cases.

"[*Shipment of Liquors into a State, etc., in Violation of Any Law Thereof, Prohibited.*] That the shipment or transportation, in any manner or by any means whatsoever, of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one state, territory, or district of the United States or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which said spirituous, vinous, malted, fermented, or other intoxicating liquor *is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such state,* territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited."

Fed. Stat. Anno. Supp. 1914, p. 208.

The liquors in question having been received by the defendant for the express purpose of bringing them into this state, to be possessed by him and transported over the public highway, they were not commodities of interstate commerce, and the defendant violated the statutes of the state, and is amenable thereto. The oral charge of the court was in accord with these views, and was free from error, and the charges refused to the defendant for like reasons were properly refused.

[4] There was no error in the rulings of the court as to the argument of the solicitor. The defendant's testimony tended to show that it was a part of his agreement with Morris that Morris "would take care of him," and the solicitor had a right to comment on this evidence. The other argument complained of was in answer to statements made by defendant's counsel in argument to the jury.

[5] The complaint upon which the defendant was tried contained seven different counts framed under different statutes, and the cause was, without objection, submitted to the jury on all the counts, and the jury returned a verdict finding the defendant guilty as charged in counts 2, 5, and 6, assessing a fine of $500 under each of said counts, and judgment followed, adjudging the defendant guilty under each of said counts. This proceeding, in so far as appears from the record proper, is in accordance with the statute. Acts 1915, p. 31, § 30; Acts 1909, p. 91, § 30; Shivers v. State, 7 Ala. App. 110, 61 South. 467.

Whether the evidence in the case justified the defendant's conviction on more than one count is a question not presented on the record. Woodson v. State, 170 Ala. 87, 54 South. 191; Trent v. State, 15 Ala. App. 485, 73 South. 834; Addington v. State, ante, p. 10, 74 South. 846; Barefield v. State, 14 Ala. App. 638, 72 South. 293.

No error appearing upon the record, the judgment must be affirmed.

Affirmed.