515 So.2d 721 (1987)
Austin CASON
v.
STATE.
7 Div. 487.
Court of Criminal Appeals of Alabama.
April 14, 1987.
Rehearing Denied May 26, 1987.
*722 Arthur Parker, Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and Jane LeCroy Brannan, Asst. Atty. Gen., for appellee.

AFTER REMANDMENT
BOWEN, Presiding Judge.
The judgment of the circuit court is affirmed on authority of Ex parte State (Re Cason v. State), 515 So.2d 719 (Ala.1987).
AFFIRMED.
All Judges concur.

ON REHEARING AFTER REMANDMENT
BOWEN, Presiding Judge.
On application for rehearing, Cason presents two issues which, although raised in his brief on the initial submission of this appeal, were not addressed by this Court because of the reversal on another ground.

I
Cason argues that his conviction should be reversed because of the improper and persistent comments of the prosecuting attorneys. We disagree.

A.
In his opening argument to the jury at the end of the trial, one of the prosecuting attorneys stated, "I don't apologize for not offering the gun into evidence. We just simply don't have it." Defense counsel objected because "[t]here's no evidence as to that." The trial judge overruled.
The State's evidence showed that Cason shot and killed James Watts with a .22-or.25-caliber automatic pistol. Clarence Pope testified that immediately after Watts was shot, Cason's brother "run up and took" the pistol out of Cason's hand. This was corroborated by James Wood who testified that after Harold Cason grabbed the gun out of Cason's hand he said, "I've got the gun" and "ran out through the woods" with the pistol. Riverside Police Officer Don Lowe testified to the effect that the murder weapon was not recovered.
Harold Cason, the appellant's brother, testified that he took a gun out of his brother's hand and "as soon as I come back with it, I was hit from the side." Then he "broke and run and called the police." The gun was "knocked immediately" from his hand and he did not have the pistol when he "ran off." Harold admitted that he had been "charged with hiding that gun."
Cason testified in his own defense that he had a .22 automatic pistol and that he fired it once in the air after Pope hit him. He denied intentionally shooting anyone and testified that Pope "had grabbed me around the arm there and was wrestling it, and the gun started shooting. And I was trying to get away from him." Cason was severely beaten and testified that he did not remember anything after being attacked.
From the evidence presented, it was a fair and reasonable assumption that the murder weapon had not been recovered and that it was not in the State's possession. "[T]he rule is that counsel are allowed considerable latitude in drawing their deductions from the evidence in argument to the jury." Espey v. State, 270 Ala. 669, 674, 120 So.2d 904 (1960). "[C]ounsel may draw any inference which the facts tend to support." Brothers v. State, 236 Ala. 448, 452, 183 So. 433 (1938).

B.
The prosecutor also argued that Cason "was looking for somebody to kill" and stated: "[H]e wanted to kill somebody. If it had been you or you or you or you" *723 referring to the jurors. The trial judge sustained defense counsel's objection, instructed the jury to "disregard any inference to the individual jurors themselves," and cautioned the prosecutor "against that kind of argument."
The objection was properly sustained.
"It is not permissible to single out a juror or jurors in argument and appeal to their fears or prejudices." Atchison v. State, 331 So.2d 804, 806 (Ala.Cr.App.), cert. denied, 331 So.2d 806 (Ala.1976). "A party cannot claim error where no adverse ruling is made against him." Holloway v. Robertson, 500 So.2d 1056, 1059 (Ala.1986); Showers v. State, 407 So.2d 169, 171 (Ala. 1981). "An adverse ruling is a preliminary requirement to preservation of error and appellate review." Van Antwerp v. State, 358 So.2d 782, 790 (Ala.Cr.App.), cert. denied, Ex parte Van Antwerp, 358 So.2d 791 (Ala.1978).

C.
In his rebuttal closing argument to the jury, the district attorney commented on the fact that the State did not produce the murder weapon. From the record:
"[MR. BURTTRAM, district attorney:] Now, there's been a lot said about that little gun or the failure on the part of the State. And Mr. Parker, as I have described him as an experienced trial lawyer, would know that if we had tried to introduce that bullet into evidence or a shall casing into evidence that we didn't have a gun to match it to, he would be the first man on his feet objecting.
"MR. PARKER: I object to that statement. They had every right, if they had such evidence, to introduce it. That is not a statement as to the law.
"THE COURT: All right. I'm going to allow it.
"There's reasonable inference.
"Go ahead.
"MR. BURTTRAM: Now, the statement that he just made in your presence bears on what I'm telling you. I would have had a right to put it into evidence if I could have got it in there properly if we had had the gun. But where is the gun?
"All twelve of you heard his brother. You heard a witness testify where that gun went, didn't you? You did just like I did. I sat right there, and I heard Harold say that he pulled it out of Austin's hand, and he left going back up the hill, and then he would have you believe
"MR. PARKER: We object. That's not He said that he was not
"THE COURT: All right. Mr. Parker, I'm going to overrule your objection. The jury has heard the evidence. They are capable of deciding what Mr. Burttram says is his closing statement."
The district attorney's argument was a reply in kind to the arguments of both defense counsel. Gibson v. State, 347 So. 2d 576, 579-80 (Ala.Cr.App.1977).
The closing arguments of defense counsel were transcribed and reveal that counsel argued that "[t]he lack of evidence bothers me in this case" and asked the jury "why didn't they come in here and show us what caliber bullet that was? ... And they haven't given ya'll that information. * * * The State has not given you the full picture of what was going on out there." Defense counsel also argued that, although the toxicologist's report showed that "a small caliber bullet" was recovered from the victim's body, "[i]t is entirely possible that a bullet from Mr. Cason's gun hit him in the head. It's also entirely possible that the other guns out there could have shot him also." Officer Lowe had testified that in investigating the crime he arrested a subject with a .45-caliber pistol on "a separate related offense" and that they also recovered a 9 millimeter pistol.
We find no error in the prosecutor's argument:
"The prosecutor has a right to comment on and answer statements made by defense counsel in argument to the jury. Dollar v. State, 26 Ala.App. 361, 159 So. 704 (1935); Moragne v. State, 16 Ala. App. 26, 28, 74 So. 862, 864, reversed on other grounds, 200 Ala. 689, 77 So. 322 (1917). Counsel should be afforded wide latitude in responding to assertions made *724 by opposing counsel in previous argument. York v. State, 34 Ala.App. 188, 190, 39 So.2d 694, 696 (1948), cert. denied, 252 Ala. 158, 39 So.2d 697 (1949). `Wide latitude is given the solicitor in making reply to argument previously made by appellant's counsel.' Moody v. State, 40 Ala.App. 373, 374, 113 So.2d 787, 788 (1959). `[W]ide latitude is given a district attorney in making reply in kind, ... and the propriety of argument of counsel is largely within the trial court's discretion.' Jetton v. State, 435 So.2d 167, 171 (Ala.Cr.App.1983)." Dossey v. State, 489 So.2d 662, 665 (Ala.Cr. App.1986).
We distinguish the prosecutor's argument in this case from that where the prosecutor, not replying to any argument advanced by defense counsel, refers to certain facts which are not in evidence but which he would have introduced if not for the existence of the rules of evidence. Ex parte Washington, 507 So.2d 1360 (Ala.1986).

II
It is also argued that Cason's conviction should be reversed because the trial court misled defense counsel into believing that the jury would be charged on criminally negligent homicide.
Prior to final arguments to the jury, the trial judge conducted a "charge conference" during which defense counsel requested a charge on criminally negligent homicide:
"MR. PARKER [Defense Counsel]: We would request a charge on manslaughter and criminally negligent homicide.
"THE COURT: I was not going to give criminally negligent homicide.
"MR. BURTTRAM [District Attorney]: I don't think the evidence justifies giving that.
"MR. PARKER: I think it does, Judge.
"THE COURT: Well, it didn't up until the point he took the stand, but I think possibly under his statement he discharged a firearm, I think the jury could find that while that may be a defense to murder or manslaughter, it may nothe may have still done that act with, you know, a negligent manner not considering the safety of others. I don't know whether that would be reckless or criminally negligent homicide.
"That's my view right now as to the charges."
Defense counsel may very well have been misled for the judge's response is ambiguous, uncertain, and equivocal. Counsel should have sought further clarification from the trial judge.
The trial judge charged the jury on murder and manslaughter but not criminally negligent homicide.
Rule 14, A.R.Cr.P.Temp., provides that, where written requested charges have been filed, "[t]he court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, ..." To give this portion of the rule any validity at all, the trial court should instruct the jury as it informed counsel it would. If the trial court changes its decision, it should inform counsel before closing argument to the jury.
Despite this, we disagree with defense counsel's argument that he was prejudiced by this misinformation. In their closing arguments, defense counsel argued to the effect that the State had not presented the entire case, was withholding evidence and, was "covering up" the truth. They argued that Cason did not shoot the victim and that if he did it was in self-defense. In their arguments to the jury, there was only one statement referring to criminally negligent homicide.
"Criminally negligent homicide is another offense included in this indictment, which means if you act negligently, if you fail to perceive a risk that substantial injury or harm will come to somebody but you do the thing anyway, that's what we call criminally negligent homicide. His Honor will explain that to you more."
Under these circumstances and for the reasons stated in Part II of our original opinion, we find that no prejudice has been shown by the judge's failure to instruct on criminally negligent homicide.
*725 The judgment of the circuit court remains affirmed. The application for rehearing is overruled.
OPINION EXTENDED;
APPLICATION FOR REHEARING OVERRULED.
All Judges concur.